## BARNEY, COLLECTOR, *v.* WATSON ET AL.

The act of Feb. 26, 1845 (5 Stat. 727), prescribing the time and manner of making protest to a collector of customs in cases therein mentioned, continued in force until the passage of the act of June 30, 1864 (13 id. 202).

ERROR to the Circuit Court of the United States for the Southern District of New York.

*Mr. Assistant Attorney-General Edwin B. Smith* for the plaintiff in error.

*Mr. J. Hubley Ashton, contra.*

Mr. Justice Bradley delivered the opinion of the court.

This was a suit brought by the defendants in error against the collector of customs at New York to recover certain duties alleged to have been overcharged upon certain goods imported in December, 1863. The plaintiffs claimed that they were "flannels," dutiable at only thirty-five per cent *ad valorem:* the collector held them to belong to a particular class of goods which were subject to an additional specific duty of eighteen cents per pound. As the quantity of goods was seven thousand nine hundred and eighty-four pounds, the difference was $1,437.12. For this amount, with interest, the plaintiffs brought the suit.

The goods in question were part of a large invoice entered on the 24th of December, 1863; on which day the sum of $8,840.93 was paid on account. The entry was not liquidated until the early part of March, 1864, when an additional sum of $1,182.71 was demanded. To this the plaintiffs demurred, as it was based on the aforesaid charge of eighteen cents per pound, in addition to the *ad valorem* duty on the goods in question.

The questions arising at the trial as to the character and dutiability of the goods referred to, and the evidence proper to decide the same, are not of sufficient importance to demand special consideration. The principal question below, and that which has been most discussed in this court, is, whether the plaintiffs gave timely and sufficient notice of protest and dissatisfaction with the decision of the collector.

No objection was made until the additional amount was demanded in March, 1864. The import entry was indorsed with the following memorandum: "Liquidated, and notified importer, March 11, 1864." The additional duty was paid, and a formal protest in writing was served by the plaintiffs on the 24th of March, 1864. In the mean time the importers had appealed to the Secretary of the Treasury, and had obtained his decision, dated the 21st of March, affirming that of the collector.

The defendant insisted that this protest was too late; that it should have been made within ten days from the entry of the liquidation on the import entry: but the court allowed

the plaintiffs to prove that the liquidation was really completed before the 11th of March; and that, within ten days after its completion, a written notice of dissatisfaction, different from the formal protest, was given to the collector. To this the defendant excepted. The jury rendered a verdict for $2,235.72, being the whole amount demanded, with interest.

It is assumed in the argument, and seems to have been assumed at the trial, that the case was governed by the act of March 3, 1857 (11 Stat. 195), by the fifth section of which it was provided, —

" That on the entry of any goods, wares, and merchandise imported on and after the first day of July aforesaid, the decision of the collector of the customs at the port of importation and entry, as to their liability to duty or exemption therefrom, shall be final and conclusive against the owner, importer, consignee, or agent of any such goods, wares, and merchandise, unless the owner, importer, consignee, or agent, shall, within *ten days* after such entry, give notice to the collector, in writing, of his dissatisfaction with such decision, setting forth therein, distinctly and specifically, his grounds of objection thereto, and shall within *thirty days* after the date of such decision appeal therefrom to the Secretary of the Treasury, whose decision on such appeal shall be final and conclusive; and the said goods, wares, and merchandise shall be liable to duty or exempted therefrom accordingly, any act of Congress to the contrary notwithstanding, unless suit shall be brought within thirty days after such decision for any duties that may have been paid, or may thereafter be paid, on said goods, or within thirty days after the duties shall have been paid in cases where such goods shall be in bond."

On examination of the various acts of Congress relating to claims for overcharge of duties on imported goods, we are satisfied that the act of 1857, above quoted, had no application to this case, but that the case was governed by an act passed on the 26th of February, 1845 (5 Stat. 727).

To make this more apparent, it will be necessary briefly to advert to the history of the laws on this subject.

The case of *Elliot* v. *Swartwout*, 10 Pet. 137, decided in 1836, affirmed the principle which had been established by previous authorities, — that money paid to a collector for duties illegally demanded, if paid under compulsion, in order to get possession

of the party's goods, or to prevent their being seized for the duties, may be recovered against the officer in an action at common law, provided the payment be made under protest and with full notice of the intent to sue, so that the officer may protect himself by retaining the money in his possession; but that a payment voluntarily made without such protest cannot be recovered back. The embarrassments which ensued in consequence of the large amount of duties withheld from the public treasury by Mr. Swartwout, the defendant in that case, induced the passage of an act in 1839 (5 Stat. 348, sect. 2), which required all duties collected to be paid into the treasury without regard to claims for overcharge, and deprived the party of an action at law by giving him the specific remedy of an appeal to the Secretary of the Treasury. This was held to be the effect of the act, although not its express terms, as may be seen by a reference to the case of *Cary* v. *Curtis*, reported in 3 How. 236. In 1845, the right of action was restored by an act passed to explain the act of 1839. It declared that nothing contained in this act should be construed to take away the right of any person who should pay money for duties under protest in order to obtain goods imported by him, which duties were not authorized or payable, in part or in whole, by law, to maintain an action at law to ascertain and try the validity of such demand and payment, and to have a right to a trial by jury according to the due course of law; but it required the protest to be made in writing, and signed by the claimant at or before the payment of the duties, setting forth distinctly and specifically the grounds of objection to the payment thereof. Act of Feb. 26, 1845 (5 Stat. 727). This act was never repealed until the passage of the act to increase duties on imports, approved June 30, 1864, by the fourteenth section of which (13 Stat. 214) it was enacted, that on the entry of any vessel, or of any goods, the decision of the collector as to the rate and amount of the duties, both on the tonnage of the vessel and on the goods, should be final and conclusive, unless the owner or consignee should, within ten days after the ascertainment and liquidation of the duties, give notice in writing to the collector, on each entry, if dissatisfied with his decision, setting forth distinctly and specifically the grounds of objec-

tion, and should appeal to the Secretary of the Treasury within thirty days after such ascertainment and liquidation, and unless suit should be brought within ninety days after the Secretary's decision.  This act supplied the act of 1845, and repealed it by implication.  But it was not in force when the goods in question in this case were imported: therefore the proceedings in this case were subject to the regulations of the act of 1845, which required the protest to be made at or before the payment of the duties alleged to be illegal.

The act of 1857, which was erroneously supposed to govern the case, did not relate to a decision upon the rate and amount of the duties to be charged, but to the decision of the collector whether the goods were on the free list or not.  This act was passed for the purpose of reducing duties on imports still lower than the rates imposed by the tariff act of 1846, and it made a large addition to the list of articles entirely exempt from duty. The list of additional articles exempted is extended at large in the act, and occupies the greater part of it.  The last section then enacts, that, on the entry of any goods imported after the first of July then next, the decision of the collector *as to their liability to duty or exemption therefrom* shall be final and conclusive, &c., unless the importer or consignee, &c., shall, within ten days after such entry, give notice to the collector, in writing, of his dissatisfaction, &c.  Now, the question, whether goods imported were or were not on the free list, and exempt from any duty at all, could and necessarily would be decided on their entry, and need not await any ascertainment or liquidation of the amount.  Hence it was required that the notice of dissatisfaction should be made within ten days after such entry; and the requirement, on this view of the act, was a reasonable one.  The act does not in terms, nor by implication, repeal the act of 1845.  That act still furnished the rule to be observed, if the importer, admitting that the goods were dutiable, questioned the rate and amount of duties to be paid.  In most cases, the amount, and in many cases the rate, could not be ascertained until after examination and appraisement; and hence a limitation to ten days from the time of entry would often, perhaps generally, deprive the party of any remedy at all.

The question in the case, therefore, really was, whether the importers made their protest in accordance with the act of 1845; namely, at or before paying the duties complained of. It is not denied that they did this so far as relates to the additional charge of $1,182.72: but they claim a return of more than this; and, under the charge of the court, they obtained a verdict for nearly double this amount, which would include some portion of the money paid by them without protest when the goods were first entered.   This was erroneous.

*Judgment reversed, and cause remanded with directions to award a venire de novo.*