ARNSON and Another *v.* MURPHY, Collector.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN-DISTRICT OF NEW YORK.

Argued October 15th, 1883.—Decided November 19th, 1883.

*Collector—Customs Duties—Limitations—Statutes.*

1. The common-law right of action against a collector to recover back duties illegally collected is taken away by statute, and a remedy given based on statutory liability, which is exclusive.
2. The time fixed by statute for commencing this action is within ninety days after the adverse decision of the secretary of the treasury on appeal, but if the secretary fail to render a decision within ninety days, the importer has the option either to begin suit, treating the delay as a denial, or to await the decision, and sue within ninety days thereafter.
3. The limitation laws of the State in which the suit is brought do not furnish the rule for determining whether the action is brought in time.

The facts appear in the opinion of the court.

*Mr. Lewis Sanders* for the plaintiff in error.
*Mr. Solicitor-General* for the defendant.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This action was brought May 8th, 1879, by the plaintiffs in error in the Supreme Court of New York, to recover money alleged to have been illegally exacted by the collector for customs duties, and was removed by the defendant by writ of *certiorari* to the Circuit Court of the United States for that district.

On the trial it appeared that the several amounts alleged to have been illegally exacted were paid under protest, duly made, on various dates from April 26th, 1871, to November 29th,

1871; that within ninety days from date of each payment an appeal from the decision of the collector had been duly taken to the secretary of the treasury, and that no decision by that officer, in any of the cases, had been rendered prior to the commencement of this action; and that this suit was not brought until after ninety days had elapsed from the date of the latest appeal, and not until after the lapse of more than six years from the expiration of that period.

The defendant pleaded in bar, besides other defences, that the cause of action sued upon did not accrue with six years before the commencement thereof, that being the limitation prescribed by the statute of New York, then in force, for actions upon contracts, obligations, or liabilities, express or implied, other than those upon judgments or decrees of courts of the United States, or of courts of any State or Territory within the United States, and those upon sealed instruments.

The court thereupon directed a verdict in favor of the defendant, to which exception was duly taken, and for that alleged error the judgment thereon is now brought into review.

The cause of action arose under the act of June 30th, 1864, 13 Stat. 202, the 14th section of which is now section 2931 of the Revised Statutes. It distinctly provides, that, on the entry of any merchandise, the decision of the collector of customs at the port of importation and entry, as to the rate and amount of duties to be paid on such merchandise and the dutiable costs and charges thereon, shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of the merchandise shall, within ten days after the ascertainment and liquidation of the duties by the proper officers of the customs, give notice in writing to the collector on each entry, if dissatisfied with his decision, setting forth therein, distinctly and specifically, the grounds of his objections thereto, and shall, within thirty days after the date of such ascertainment and liquidation, appeal therefrom to the secretary of the treasury. The decision of the secretary on such appeal shall be final and conclusive, and such merchandise shall be liable to duty accordingly, unless suit shall be brought within ninety days after the decision of the secretary of the

treasury on such appeal, for any duties which shall have been paid before the date of such decision on such merchandise, or costs or charges, or within ninety days after the payment of duties paid after the decision of the secretary.

" No suit shall be maintained in any court for the recovery of any duties alleged to have been erroneously or illegally exacted, until the decision of the secretary of the treasury shall have been first had on such appeal, unless the decision of the secretary shall be delayed more than ninety days from the date of such appeal, in case of an entry at any port east of the Rocky Mountains, or more than five months in case of an entry west of those mountains."

The common-law right of action to recover back money illegally exacted by a collector of customs as duties upon imported merchandise, rested upon the implied promise of the collector to refund money which he had received as the agent of the government, but which the law had not authorized him to exact; which had been unwillingly paid, and which, before payment to his principal, he had been notified he would be required to repay; and involved a corresponding right on his part to withhold from the government, as an indemnity, the fund in dispute. The manifest public inconveniences resulting from this situation induced Congress, by the act of March 3d, 1839, ch. 82, 5 Stat. 348, sec. 2, to alter the relation between these officers and the United States by requiring them peremptorily to pay into the treasury all moneys received by them officially, without regard to claims for erroneous and illegal exactions. It was provided, however, therein, that the secretary of the treasury himself, on being satisfied that, in any case of duties paid under protest, more money had been paid to the collector than the law required, should refund the excess out of the treasury. The legal effect of this enactment, as was held in *Cary* v. *Curtis*, 3 How. 236, was to take from the claimant all right of action against the collector, by removing the ground on which the implied promise rested. Congress, being in session at the time that decision was announced, passed the explanatory act of February 26th,

1845, which, by legislative construction of the act of 1839, restored to the claimant his right of action against the collector, but required the protest to be made in writing at the time of payment of the duties alleged to have been illegally exacted, and took from the secretary of the treasury the authority to refund conferred by the act of 1839, 5 Stat. 349, 727. This act of 1845 was in force, as was decided in *Barney* v. *Watson*, 92 U. S. 449, until repealed by implication by the act of June 30th, 1864, 13 Stat. 214. The 14th section of the act last mentioned is, as already cited, in substance, the present sec. 2931 of the Revised Statutes, providing for the appeal to the secretary of the treasury, and the 16th section, being the present sec. 3012½, Rev. Stats., restores to the secretary of the treasury the authority to refund moneys paid under protest and appeal, which he shall be satisfied were illegally exacted, originally conferred upon him by the act of 1839. And the provision of the act of 1845, which construed the act of 1839 so as to restore to the claimant the right of action, judicially declared in *Cary* v. *Curtis, supra,* to have been taken away by the latter, now appears as sec. 3011 of the Revised Statutes. It was in force when the present action was brought, and is as follows:

"Any person who shall have made payment under protest and in order to obtain possession of merchandise imported for him, to any collector or person acting as collector of any money as duties, when such amount of duties was not, or was not wholly, authorized by law, may maintain an action in the nature of an action at law, which shall be triable by jury, to ascertain the validity of such demand and payment of duties, and to recover back any excess so paid. But no recovery shall be allowed in such action unless a protest and appeal shall have been taken as prescribed in section twenty-nine hundred and thirty-one."

By reference to the 14th section of the act of 1864, now sec. 2931 Rev. Stats., it will appear that the written protest must be made within ten days, and the appeal to the secretary of the treasury within thirty days, from the ascertainment and

liquidation of the duties by the proper officer. The decision of the secretary on such appeal shall be final and conclusive, unless within ninety days after it was made suit is brought; and no suit shall, in the meantime, pending the appeal, be brought unless the decision by the secretary shall be delayed more than ninety days from the date of the appeal, if arising upon an entry at any port east of the Rocky Mountains.

It appears to us quite plain, from the reading of the statute, that no action arises to the claimant, in such cases, until after a decision against him by the secretary of the treasury; and that his suit against the collector is barred unless brought within ninety days after an adverse decision upon his appeal; but, with the proviso, that if such decision is delayed more than ninety days after the date of his appeal, it is at the claimant's option either to sue, pending the appeal, treating the delay as a denial, or to wait until a decision is in fact made, and then sue within ninety days thereafter. It cannot be that he is obliged, in case for any reason a decision at the Treasury Department is delayed beyond the appointed time, to treat the delay as an adverse decision, and to bring his suit while the matter is still *sub judice*. There is no language in the act requiring such a conclusion, it is inconsistent with the terms actually employed, and is not founded on any sufficient reason. The right to sue at all, before the final decision of the appeal, is merely inferred from the form of the exception, and in its nature is permissive and not peremptory. The right to sue at any time within ninety days after the decision on the appeal is clearly given in the terms which declare that such decision shall not be conclusive if suit is brought thereafter within that period; and the prohibition against suing before such decision is rendered, is express, with the saving only on the part of the claimant to sue before final decision is rendered, if such decision is delayed for more than ninety days after the date of the appeal. But there is nothing which requires him to sue until after such decision has been rendered. The whole purpose of the saving in his favor evidently is, that he shall not be required to wait longer than ninety days after his appeal for an adjudication. There is nothing to forbid his waiting, with-

out suit, as long as he has reason to expect a favorable decision upon his appeal.

From this review of the legislation and judicial history of the subject, it is apparent that the common-law action recognized as appropriate by the decision in *Elliott* v. *Swartwout,* 10 Peters, 137, has been converted into an action based entirely on a different principle—that of a statutory liability, instead of an implied promise—which, if not originated by the act of Congress, yet is regulated, as to all its incidents, by express statutory provisions. And among them are the conditions which fix the time when the suit may begin, and prescribe the period at the end of which the right to sue shall cease. Congress having undertaken to regulate the whole subject, its legislation is necessarily exclusive. For any inconveniences that may result to outgoing collectors or the representatives of those who have deceased, by the unavoidable delays in deciding appeals in the Treasury Department, and the absence of a definite period of time beyond which no suit shall be brought, it is for Congress alone to apply the needful remedy.

It follows that in such cases, of which the present is one, the limitation laws of the State in which the cause of action arose, or in which the suit was brought, do not, under section 721, Rev. Stats., furnish the rule of decision, and that it was, therefore, an error in the circuit court to apply, as a bar to the action, the limitation prescribed by the statute of New York.

For that error the judgment is accordingly reversed, and the cause remanded with instructions to grant a new trial, and

*It is so ordered.*