BIRTWELL v. SALTONSTALL, Collector.

(Circuit Court, D. Massachusetts. September 28, 1894.)

No. 377.

·CUSTOMS DUTIES—EXCESSIVE EXACTIONS—TIME OF MAKING PROTEST.

Rev. St. § 3011, provides that "any person who shall have made payment under protest," in order to obtain possession of goods, may maintain an action to recover back any excess paid, "but no recovery shall be allowed * * * unless a protest and appeal shall have been taken as provided in section 2931." *Held*, that the reference to the latter section is for the time as well as the form of the protest, and hence that it need not be made before or at the time of⁻the payment of the duties, but is good if made within 10 days thereafter.

This was an action by Joseph Birtwell against Leverett Salton-stall, collector of the port of Boston, to recover duties paid under protest. There was originally a judgment for plaintiff (39 Fed. 383), but this was reversed, on defendant's appeal, by the supreme court ·(150 U. S. 417, 14. Sup. Ct. 169), and a new trial ordered. A new trial having been accordingly had, the opinion below was filed.

Josiah P. Tucker, for plaintiff.

Sherman Hoar, U. S. Atty., and Wm. G. Thompson, Asst. U. S. Atty., for defendant.

COLT, Circuit Judge. The position taken by the United States attorney in behalf of the defendant is that where an importer, in order to obtain possession of his merchandise, pays the duties under section 3011, Rev. St., he must, at or before the time of such payment, make a written protest; and that a protest made within 10 days after the ascertainment and liquidation of duties under section 2931 is insufficient, because too late in point of time; and that, therefore, such protest, although complying with the provisions of section 2931, cannot be admitted in evidence as a legal protest in a suit brought by the importer against the collector to recover back the excess of duties.

It must be remembered at the outset that the whole subject of the right of action by an importer to recover duties illegally exacted by a collector, which includes, of course, the question of protest, is now purely statutory. This has been so decided by the supreme ·court in Arnson v. Murphy, 109 U. S. 238, 3 Sup. Ct. 184, and Porter v. Beard, 124 U. S. 429, 8 Sup. Ct. 554. The old common-law right of action recognized and applied in Elliott v. Swartwout, 10 Pet. 137, and which rests upon the implied promise of the collector to refund money which he had received as the agent of the government, but which the law did not authorize him to exact, has been superseded by an action based exclusively on a statutory liability. Mr. Justice Matthews, speaking for the court in Arnson v. Murphy, says:

"From this review of the legislative and judicial history of the subject, it is apparent that the common-law action recognized as appropriate by the decision in Elliott v. Swartwout, 10 Pet. 137, has been converted into .an action based entirely on a different principle,—that of a statutory lia-bility, instead of an implied promise,—which, if not originated by the act

of congress, yet is regulated, as to all its incidents, by express statutory provisions. * * * Congress having undertaken to regulate the whole subject, its legislation is necessarily exclusive."

The protest, therefore, which we have to consider in this case, is not the old common-law protest, but the protest provided by statute. More specifically stated, the question is not at or within what time a protest at common law must be made to entitle a person to recover back money illegally exacted, but within what time does the statute declare a protest must be made in order to give to an importer a right of action against a collector for duties claimed to be in excess of law, where such duties are paid in order to obtain possession of the merchandise. If the first part of section 3011, which says that "any person who shall have made payment under protest and in order to obtain possession of merchandise imported for him," was the whole statutory law on the subject of protest, I admit the force of the government's position; but I cannot admit, taking the whole of section 3011, in connection with section 2931, as they exist in the Revised Statutes, as amended and corrected by the act of March 2, 1877, that the argument of the government is sound. Section 3011, which is taken from the act of February 26, 1845 (5 Stat. 727), provides that "any person who shall have made payment under protest and in order to obtain possession of merchandise imported for him" may maintain an action at law against the collector to ascertain the validity of such payment, and to recover back any excess so paid; "but no recovery shall be allowed in such action unless a protest and appeal shall have been taken as provided in section twenty-nine hundred and thirty-one." Section 2931, which is taken from section 14 of the act of June 30, 1864 (13 Stat. 202), provides as follows:

"On the entry of * * * any merchandise, the decision of the collector * * * as to the rate and amount of duties to be paid * * * on such merchandise * * * shall be final and conclusive against all persons interested therein, unless the owner, * * * shall within ten days after the ascertainment and liquidation of the duties by the proper officers of the customs, as well in cases of merchandise entered in bond as for consumption, give notice in writing to the collector on each entry, if dissatisfied with his decision, setting forth therein, distinctly and specifically, the grounds of his objection thereto, and shall within thirty days after the date of such ascertainment and liquidation appeal therefrom to the secretary of the treasury. The decision of the secretary on such appeal shall be final and conclusive; and such * * * merchandise * * * shall be liable to duty accordingly, unless suit shall be brought within ninety days after the decision of the secretary of the treasury, on such appeal."

It is perfectly clear that these two sections of the statute are to be construed together. When section 3011 declares that no recovery shall be allowed unless a protest and appeal shall have been taken as prescribed in section 2931, it makes the provisions respecting protest and appeal contained in that section a part of section 3011, and the result is the same as if those provisions had been actually inserted in the latter section. The act of 1845, which has now become section 3011, contained specific provisions respecting the form and time of protest. It declared that no action can be

maintained for receiving back duties "so paid under protest, unless the said protest was made in writing, and signed by the claimant at or before the payment of said duties, setting forth distinctly and specifically the grounds of objection to the payment thereof." But these provisions respecting the form and time of protest which are found in the act of 1845 have been eliminated from section 3011, and there has been substituted therefor the kind of protest called for by section 2931. Surely, the only conclusion that can fairly and reasonably be drawn from this is that the protest provided for in section 2931 is to take the place of the protest described in the act of 1845, as applied to those who pay duties under protest for the purpose of obtaining their merchandise.

The argument of the government is that while the act of March 3, 1839 (5 Stat. 348, § 2), as construed by the supreme court in Cary v. Curtis, 3 How. 236, took away the old common-law right of action by the importer against the collector for illegally exacted duties, the act of February 26, 1845 (5 Stat. 727), now section 3011, was simply declaratory of the old common-law right which had previously existed; and that, consequently, as a protest at common law must be made at or before the time of payment, so the words "payment under protest," in the act of 1845 and in section 3011, must and do signify that the protest must be made at or before the time of payment. If the act of 1845 had limited itself merely to the restoration of a previously existing common-law right, and had left the law of protest as it stood at common law, there would be much force in this argument. But the trouble is that the act of 1845 changes the old common law on the subject, and creates a new and statutory protest. To be sure, it uses the language "paid money under protest" in the beginning of the section; and, if it had left the matter there, it might properly be said that these words are merely a statement of the old rule, and signify a protest at or before the time of payment; but, at the close of the act, congress goes on to define what shall constitute a payment under protest in order to entitle a party to recover, by declaring that no action shall be maintained for the receiving of duties "so paid under protest, unless the said protest was made in writing, and signed by the claimant, at or before the payment of said duties, setting forth distinctly and specifically the grounds of objection to the payment thereof." Payment under protest in the act of 1845 signifies a payment under the statutory protest prescribed in the last part of the act. A protest at common law might be by parol, but this statutory protest must be made in writing, and must set forth distinctly the grounds of objection. As the words "paid money under protest" in the act of 1845 are controlled by the closing words of the section describing the form and time of protest, so in section 3011 the words "payment under protest" should be interpreted in the light of the closing portion of the section, which says: "But no recovery shall be allowed in such action unless a protest and appeal shall have been taken as provided in section twenty-nine hundred and thirty-one." To hold otherwise would be

to divorce the words "payment under protest" from the rest of the section, and to interpret them as if they stood alone and were all that was said on the subject. It would be to declare that the protest required in the first part of the section must be one kind of protest, and the protest mentioned in the last part of the section must be another kind of protest as applied to the same subject-matter. If we take the words "payment under protest" by themselves, and as having reference to the old common-law protest, I do not see why a parol protest is not sufficient to answer the requirement of the statute as to this protest, because there is nothing to show that anything more is required, and therefore it is only by connecting together the first and last parts of section 3011 that any additional statutory requirements respecting protest become necessary. But the government insists that the protest must be in writing; and, if so, it must be from something which is found in the statute, and that something is found in the closing part of the act of 1845 and the closing part of section 3011, in which reference is made to section 2931. If the protest must be in writing, by virtue of the force of these provisions, then it should conform to these provisions in other respects. The only logical conclusion from this position of the government is that "payment under protest" means payment under the statutory protest as first described in the act of 1845, and as now set forth in section 2931, Rev. St.

The position of the government is that these statutory regulations on the subject of protest govern as to form, but not as to time; and the argument seems to be this: To entitle a person to this right of action at common law, payment must be made at or before the time of protest. The act of 1845 (section 3011) merely restored the old common-law right of action, and is the enabling act conferring this right, as distinct from section 2931, which merely limits and restricts the right. "Payment at or before the time of protest" is synonymous with "payment under protest." The words "payment under protest" appear in the act of 1845 and in all subsequent statutes which deal with this right of action. When congress amended section 3011 by the act passed in 1877 for the corrections of errors in the Revised Statutes, it struck out the protest requirements found in the act of 1845, but still left remaining the words "payment under protest;" and that it follows from these propositions that the old common-law rule still prevails as to the time of protest when the person makes payment to obtain possession of his merchandise. But, admitting the premises to be true, I do not think the conclusion follows, and for the reasons I have already given. The question of protest is now purely statutory. The protest mentioned in the first sentence of section 3011 means the protest referred to in the last sentence, and the protest referred to in the last sentence is the protest found in section 2931, where both the time and the form of protest are given.

There are no reported cases in which this identical question has been determined, but an examination into the legislative and judicial history of the law of protest and of the practice which has pre-

vailed in the treasury department in respect thereto does not, in my opinion, assist the contention of the government. We have first the act of 1845 (5 Stat. 727), in which the provisions of the protest which must be filed by persons who make payment under protest in order to obtain their goods are for the first time defined by statute. Then follows the act of June 30, 1864 (13 Stat. 202), which was passed to correct certain evils arising under the act of 1845, and which, among other things, extends the time for making protest to 10 days after liquidation. Next, we have the Revised Statutes of 1875, in which the act of 1845 appears in section 3011, and the act of 1864 in section 2931. In this edition of the Revised Statutes both forms of protest appear,—that of the act of 1845, which requires the protest to be made before or at the time of payment; and that of the act of 1864, which allows a protest to be filed within 10 days after liquidation. Then follows the act of 1877, for the correction of errors in the Revised Statutes. Under this act, congress struck out the provisions relating to protest found in section 3011, and taken from the act of 1845; and in place of what was repealed it declared the protest and appeal required should be in accordance with section 2931. I think this shows a clear expression of legislative intent to make the protest described in section 2931 the only statutory protest necessary to be made.

Under the act of 1845, it was decided by Chief Justice Taney in Brune v. Marriott, Taney, 144, Fed. Cas. No. 2,052, which decision was affirmed by the supreme court in 9 How. 619, that the protest is not required to be made on or before the payment of what is called "estimated duties," and that the protest is legally made when the duties are finally determined and the amount assessed by the collector. The court says: "The payment of the money upon the estimated duties is rather in the nature of a pledge than a payment." This authority has been questioned, and upon the point under consideration is hardly consistent with language used in Barney v. Watson, 92 U. S. 449, but it seems to be recognized as sound in Davies v. Miller, 130 U. S. 284, 9 Sup. Ct. 560. But whatever weight is to be given to Brune v. Marriott, it is important in one respect as showing that, whenever the question of the time of making protest has been in issue, the inquiry has been what is the statutory provision on this point. In that case the court only directed its examination to the construction of the words "at or before the payment," in the act of 1845; just as in Davies v. Miller, 130 U. S. 284, 9 Sup. Ct. 560, the court confined its attention to the proper signification of the words "within ten days after the ascertainment and liquidation," in the act of 1864. After the passage of the act of June 30, 1864 (section 2931), and down to the enactment of the Revised Statutes in 1875, the act appears to have been treated by the courts as repealing by implication the act of 1845, and consequently as containing the whole law on the subject of protest. Barney v. Watson, 92 U. S. 449. It has been more recently held, however, that the act of 1864 did not repeal the act of 1845, and that both acts, as now embodied in sections 2931 and 3011, Rev. St., are to be construed as coexisting.

Arnson v. Murphy, 109 U. S. 238, 3 Sup. Ct. 184; U. S. v. Schlesinger, 120 U. S. 109, 7 Sup. Ct. 442; Porter v. Beard, 124 U. S. 429, 8 Sup. Ct. 554. But, however this may be, this much is true: that, since the act of 1864, the supreme court has assumed that all the requirements of a valid protest were contained in that act, and that a protest made within 10 days after liquidation is good. The question of the time of protest under the different statutes is carefully discussed in Davies v. Miller, 130 U. S. 284, 9 Sup. Ct. 560, and it is there assumed that the act of 1864 governs as to time. And so with the treasury department. It has by its regulations and the practice of its officers, since 1864 and down to the customs administrative act of 1890, recognized a protest made before the expiration of 10 days after liquidation as good and valid under the law to enable an importer to maintain an action against a collector for the recovery of duties illegally exacted. Since the decisions in Arnson v. Murphy and other cases holding that the act of 1864 did not repeal the act of 1845, I think, if the question under consideration had arisen after the passage of the act of 1864, and before the amendment of section 3011 under the act of 1877, it would have been difficult to have arrived at a satisfactory conclusion. This difficulty, however, would not have been caused by reason of the words "payment under protest," in the first part of section 3011, but because the statute apparently contained two kinds of protest,—one described in the act of 1845, now section 3011; and the other in the act of 1864, now section 2931. The amendment of section 3011 repealing the protest therein contained removed this inconsistency, and made the law clear and intelligible.

For these reasons, I am of opinion that the protests now offered in evidence were made within the time required by law, and therefore should be admitted.