DIECKERHOFF et al. v. MILLER et al.

(Circuit Court of Appeals, Second Circuit. April 4, 1899.)

No. 154.

1. CUSTOMS DUTIES—PROTESTS.

Act Cong. Feb. 26, 1845, relating to protests on imports of goods, was repealed by Act Cong. June 30, 1864, which substituted for the common-law action of the importer against the collector a statutory remedy, and regulated its incidents. The provisions of both acts were incorporated into the Revised Statutes approved June 22, 1874; those of the act of 1864 being reproduced in section 2931, and those of the act of 1845 in section 3011. *Held*, that the provisions of the act of 1845 did not affect the rights of an importer which accrued between December 1, 1873, and June 22, 1874; and, if the importer's protests were made in the manner provided by the act of 1864, they were valid.

2. SAME—HAIRCLOTH GOODS.

Importations of bindings, braids, and buttons made between the 6th day of February and the 15th day of June, 1874, all made of mohair, should have been classified for duty under Act July 14, 1870, § 21, as corrected by joint resolution of January 30, 1871, providing that the duty "on hair-cloth known as crinoline cloth, and on all other manufactures of hair not otherwise herein provided for, 30 per cent. ad valorem," and not under the act of March 2, 1867.

In Error to the Circuit Court of the United States for the Southern District of New York.

Edwin B. Smith, for plaintiffs in error.

Henry C. Platt, for defendants in error.

Before WALLACE and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This is a writ of error by the plaintiffs in the court below to review a judgment entered upon the direction of the court. Between the 6th day of February and 15th day of June, 1874. the plaintiffs imported into New York certain bindings, braids, and buttons, all made of mohair, which is the hair of the Angora goat. Defendants' testator, collector of the port, classified these goods under the provisions of the act of March 2, 1867, entitled "An act to provide increased revenue from imported wool, and for other purposes," reading as follows:

"On webbings, beltings, bindings, braids, galloons, fringes, gimps, cords, cords-and-tassels, dress-trimmings, head-nets, buttons or barrel buttons, or buttons of other forms for tassels or ornaments, wrought by hand or braided by machinery, made of wool, worsted or mohair, or of which wool, worsted or mohair is a component material, fifty cents a pound and, in addition thereto, fifty per centum ad valorem." 14 Stat. 561.

Within 10 days after the collector had liquidated the duties upon this basis, but not at or before payment of these duties, the plaintiffs protested against this assessment, claiming their goods to be dutiable under that clause of the twenty-first section of the act of July 14, 1870 (as corrected by joint resolution of January 30, 1871), which reads thus:

"On hair-cloth known as crinoline cloth, and on all other manufactures of hair not otherwise herein provided for, 30 per cent. ad valorem." 16 Stat. 264, 593.

Answering an appeal taken by plaintiffs, the secretary of the treasury affirmed the collector's action in the premises. Thereupon this suit was seasonably brought. These facts having been proved upon the trial, the defendants, without offering evidence, asked to have a verdict directed in their favor upon these grounds: (1) That plaintiffs had not shown facts sufficient to entitle them to recover; (2) that all the importations in suit being after December 1, 1873, and prior to February 8, 1877, no protests were shown to have been made, filed, or served by the plaintiffs in this action within the time prescribed by the law in force at the time of such importations, nor has it been shown that the payments of duty thereon were made under protest, as then required by law, in order to enable the plaintiffs to maintain this action; (3) that the goods in this suit were concededly braids, buttons, and bindings of mohair, and were specifically provided for eo nomine in the act of March 2, 1867, and that the collector's action was right in assessing them for duty under said specific provision.

The only question argued at bar is whether either the second or third objection to the right of the plaintiffs to recover is well founded. The validity of the first objection depends upon the question whether the provision in respect to protest contained in the act of congress

of February 26, 1845, was repealed by that contained in the act of congress of June 30, 1864. That the latter was, by implication, a repeal of the former was declared by Mr. Justice Bradley in Barney v. Watson, 92 U. S. 453, and in Arnson v. Murphy, 109 U. S. 238, 3 Sup. Ct. 184, where the question was again considered, the court adhered to that opinion, and held that the act of 1864 substituted for the common-law action of the importer against the collector a statutory remedy, and regulated as to all its incidents his right of action to recover duties illegally exacted. The provisions of both acts were, however, incorporated into the Revised Statutes of the United States, —those of the act of 1864 being reproduced in section 2931, and those of the act of 1845 in section 3011; and it is insisted for the defendants in error that by the terms of section 5595 both provisions were embraced as laws of the United States in force on the 1st day of December, 1873. We cannot adopt this view. The Revised Statutes were approved June 22, 1874, and it was from that date that they became new enactments of the United States. It is from that date that they are to be treated as a legislative declaration of the statute law existing on the 1st day of December, 1873, respecting the subjects which they embrace. The plaintiffs' rights accrued in the interval between December 1, 1873, and June 22, 1874; and, if their protests were made in form and manner according to the statutes then in force, their remedy is not taken away by a subsequent legislative declaration that they were not thus made. Section 5595 is one of several sections, entitled "Repeal Provisions," intended to effectuate the substitution of the Revised Statutes for all pre-existing statutes, and that it was not meant to affect any act done or right accruing or accrued between December 1, 1873, and the time of the enactment of the Revised Statutes is apparent from the other sections. We have examined the many adjudications of the supreme court in which the effect of section 5595 has been considered and treated as a legislative declaration of the statute law existing on the 1st day of December, 1873, but none of them touch the present question. They are all cases in which its declaratory force was involved in respect to occurrences which took place subsequent to June 22, 1874.

We are of the opinion that the importations should have been classified for duty, under the provision of the act of 1870, as manufactures of mohair not specially enumerated or provided for in that act. It is a familiar rule in the construction of tariff acts that terms of general description must give way to those of particular description, and that a specific provision for duty on a particular article is not superseded by a provision of a subsequent statute imposing a different duty upon the class of articles of which it is one of the members. The statutes enacted at different times are parts of one composite general system, and terms of general description in a later statute have no different effect in displacing terms of particular description in an earlier statute than they have when both are used in the same act. Any alteration is to be regarded in connection with the system, and no disturbance of existing legislation is to be allowed beyond the clear intention of congress. Saxonville Mills v. Russell, 116 U. S. 13, 6 Sup. Ct. 237. Applying these rules to the present case, if in the earlier act,

or in the later and earlier acts, there were found two provisions,—one subjecting to duty "bindings, braids and buttons, made of mohair," and another subjecting to duty "all manufactures of hair," or "all manufactures of hair not otherwise provided for,"—the articles in controversy would be properly classified for duty under the former or more specific provision. If in the later act congress had imposed a duty upon "all manufactures of hair not otherwise provided for," inasmuch as the importations were subjected to duty by the previous act as "bindings, braids and buttons," they would have been otherwise provided for. But in the act of 1870 the intention of congress is distinctly expressed to reduce the duties imposed by pre-existing acts upon all manufactures of hair, except those provided for in that act itself,—"not otherwise herein provided for." The word "herein" is most significant. It excludes any reference to earlier acts to ascertain the duty upon that class of articles. The provision includes every article within the general description not in that act itself otherwise provided for. This act was considered in Arthur's Ex'rs v. Butterfield, 125 U. S. 70, 8 Sup. Ct. 714, and the court, after observing that the words, "all other manufactures of hair, not otherwise herein provided for," meant not otherwise provided for in the act of which they were a part, said:

"There is no provision in that act for other manufactures of hair than crinoline and hair seating. It therefore necessarily follows that, if the goat-hair goods in question are to be deemed manufactures of hair, the duties are to be assessed in conformity with the act, and not according to the provisions of any other act."

A similar question arose in Arthur's Ex'rs v. Vietor, 127 U. S. 572, 8 Sup. Ct. 1225. In that case, stockings imported by the plaintiffs, composed in part of wool, were classified by the collector under a provision of the tariff act of March 2, 1867, subjecting to duty "woolen cloths," woolen shawls, and all manufactures of wool of any description, made wholly or in part of wool, not herein otherwise provided for." The plaintiff insisted that the goods were dutiable under a provision of an earlier act imposing duty upon "caps, gloves, leggings, mitts, socks, stockings, woven shirts and drawers, and all similar articles made on frames, of whatever material composed, worn by men, women and children, and not otherwise provided for." The court reiterated the proposition decided in Arthur's Ex'rs v. Butterfield, that the words, "not otherwise herein provided for," in an act prescribing customs duties, mean not otherwise provided for in the act of which they are a part, and decided that the duties were properly imposed under the later act. These conclusions lead to a reversal of the judgment.