**ANNISTON MFG. CO. v. DAVIS, Collector of Internal Revenue.**

**LINCOLN MILLS OF ALABAMA v. SAME.**

Nos. 8175, 8186.

Circuit Court of Appeals, Fifth Circuit.

Jan. 8, 1937.

seph B. Brennan, both of Washington, D. C., on the brief), for appellant.

John M. Slaton, of Atlanta, Ga., amicus curiæ for appellant.

M. H. Eustace, Sp. Asst. to the Atty. Gen., and Jim C. Smith, U. S. Atty., of Birmingham, Ala., for appellee.

No. 8186:

Frank E. Spain and H. H. Grooms, both of Birmingham, Ala., for appellant.

W. W. Bankhead, of Jasper, Ala., amicus curiæ for appellant.

M. H. Eustace, Sp. Asst. to the Atty. Gen., and Jim C. Smith, U. S. Atty., of Birmingham, Ala., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

**HUTCHESON, Circuit Judge.**

Actions against the collector for refunds of cotton processing and floor stock taxes, paid by appellants under the 1933 Agricultural Adjustment Act[1]; these suits were brought before and heard on demurrers after the enactment of the Revenue Act of June 22, 1936.[2] This act adopted and purportedly made adequate provision as to amounts collected under the Agricultural Adjustment Act for the administrative and judicial enforcement of the principle given authoritative sanction in United States v. Jefferson Electric Co., 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859, that refunds of taxes illegally collected might properly be limited to those as to which the taxpayer could show that he bore the burden of the tax; that is, that the tax was really exacted from him, and not through him from others.

The act in question makes comprehensive provisions to attain the end desired, that sums collected and paid out by the government as taxes under congressional sanction, to carry out a plan esteemed to be for the general welfare, should not be paid back to those who were merely conduits through which the stream of public contributions to the plan were poured into the Treasury. These are the controlling provisions of the act as they are adequately summed up in the government's brief:

"Sec. 644, provides that no refund shall be made or allowed, in pursuance of court

No. 8175:

Sutherland, Tuttle & Brennan, of Washington, D. C. (W. A. Sutherland and Jo-

[1] Title 7, U.S.C.A. § 601 et seq.

[2] Making provisions for refund of amounts collected under the Agricultural Adjustment Act, the new provisions, chapter 690, §§ 902 to 917, 49 Stat. 1747 to 1755, are included in title 7, U.S.C.A. §§ 644 to 659.

decisions or otherwise, of any amount paid as tax under the Agricultural Adjustment Act unless the claimant establishes to the satisfaction of the Commissioner or to the satisfaction of the trial court or Board, that he has borne the burden of such amount, or that he had repaid unconditionally such amount to his vendee who bore the burden thereof.

"Section 645 provides that no refund shall be made or allowed of any amount paid as tax under the Agricultural Adjustment Act unless after the enactment of this Act and prior to July 1, 1937, a claim for refund has been filed by such person in accordance with regulations prescribed by the Commissioner with the approval of the Secretary. All evidence relied upon in support of such claim shall be clearly set forth under oath."

"Section 646 provides that notwithstanding any other provision of law, no suit or proceeding, whether brought before or after the date of enactment of this Act, shall be brought or maintained in any court for the recovery * * * of * * * any amount paid by or collected from any person as tax (except processing tax, as defined herein) under the Agricultural Adjustment Act (a) before the expiration of eighteen months from the date of filing a claim therefor under this title unless the Commissioner renders a decision thereon within that time, or (b) after the expiration of two years from the date of mailing by registered mail by the Commissioner to the claimant a notice of disallowance of that part of the claim to which such suit or proceeding relates. This condition does not apply to amounts defined as processing tax by Section 913."

"Section 647 confers jurisdiction upon the District Courts concurrent with the Court of Claims of all cases regardless of the amount involved, except suits for refund of amounts paid as processing tax, if they would otherwise have had jurisdiction except for the amount in controversy."

"Subsection (a) of section 648 provides that notwithstanding any other provision of law no suit or proceeding for the recovery of any amount paid as processing tax, as defined by section 913, whether brought before or after the date of enactment of the Act, shall be brought or maintained in any court except as provided in that section. Subsection (b) establishes in the Treasury Department a Board of Review, consisting of nine members designated by the Secretary of the Treasury, which is given exclusive jurisdiction to review the allowance or disallowance by the Commissioner of claims for refund of amounts paid as processing tax. Subsections (c) and (d) provide for the filing of petitions with the Board of Review, and for a full hearing, after notice, upon the merits of the taxpayer's claim. Proceedings before the Board of Review are open to the public, are to be conducted in accordance with such rules of practice, (other than rules of evidence) as the Board may prescribe, and are to be conducted with the rules of evidence applicable in the courts of equity of the District of Columbia. The Chairman is authorized to divide the Board into divisions (subsection (b) and the hearing may be held before a division (subsection (d). By subsection (e) the Board and its divisions are required to make written findings of fact and a decision in each case. The findings and decision of a division become the findings and decision of the Board unless within thirty days the Chairman orders such findings and decision reviewed by the Board. Subsection (g) provides for review by the Circuit Court of Appeals and the Court of Appeals for the District of Columbia for errors of law upon petition of the taxpayer or the Commissioner. Further review by the Supreme Court upon certiorari is also authorized."

"Section 649 creates certain presumptions intended to simplify the proof required under Section 644 to establish the extent to which the claimant has borne the burden of the tax sought to be recovered. Under subsection (a) a showing that the 'average margin' (as defined by the Act) per unit of commodity processed was lower during the tax period than it was during stated periods before and after the tax period creates a prima facie presumption that the claimant bore the burden of the tax, while a showing that the average margin during the tax period was not lower is made prima facie proof that the claimant did not bear the burden. By subsection (e) either the claimant or the Commissioner is permitted to rebut the presumption created by subsection (a) by showing the extent to which the claimant shifted the burden to others. The section further indicates certain matters which may be proved to overcome the presumption."

"Section 652 provides that no Collector of Internal Revenue or Customs, or internal revenue or customs officer or employee, shall be in any way liable to any person

for any act done by him in the assessment or collection of any amount as tax under the Agricultural Adjustment Act or for the recovery of any amount so collected and paid into the Treasury in performance of his official duties under the provisions of such Act, or if such Collector or officer acted under the direction of the Secretary or other proper officer of the Government."

Thus it appears that as to processing taxes the consent of the United States to be sued in the District Court is completely withdrawn. Such court review as is provided for as to these is in the Circuit Court of Appeals and the Supreme Court for errors of law. As to other tax refund claims still suable in the District Court new and different prerequisites to suit are provided.

Neither of the appellants alleged conformity with the act; indeed, both, setting it at naught, undertook to sue in spite of it. Responding to appellee's motions to dismiss for want of jurisdiction, and his demurrers to their petitions, that they stated no cause of action, each took the position that the act was without effect as to causes of action, accrued and suits begun against the collector before its passage.

This position was supported by rather feebly urging that the act did not purport to, it did not, affect claims already accrued, and already in suit, and by urging firmly and with confidence that, if it did, it would be in violation of the due process clause of the Fifth Amendment, as depriving them of their vested right to sue the collector for wrongs done them by him. The District Judge thought the Jefferson Electric Co. Case controlling. He sustained defendant's demurrers, and, plaintiffs declining to plead further, dismissed their actions. Both plaintiffs are here vigorously attacking his rulings and orders.

The arguments orally and in the briefs took wide range, but they all were concerned with, they came down at last to, the power of the Congress to subject plaintiffs' claims to the refund provisions of the June 1936 act. For it too plainly appeared to be contested, indeed, it was in effect conceded, that that act was intended to, and, if valid, did, prevent the maintenance of the suits plaintiffs had brought.

It is not claimed here, as indeed it could not be, that the act was not effective to withdraw the consent of the United States to be claimed against and sued, and therefore all right to maintain a suit against it

for refunds, except under and in strict accordance with the conditions the act prescribes. Smallwood v. Gallardo, 275 U.S. 56, 48 S.Ct. 23, 72 L.Ed. 152; Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253; United States v. Clarke, 8 Pet. 436, 8 L.Ed. 1001; Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434; Dismuke v. United States, 297 U.S. 167, 56 S.Ct. 400, 80 L.Ed. 561; United States v. Michel, 282 U.S. 656, 51 S.Ct. 284, 75 L.Ed. 598; The Collector v. Hubbard, 12 Wall. 1, 20 L.Ed. 272; Cheatham v. United States, 92 U.S. 85, 23 L.Ed. 561; Rock Island, A. & L. R. Co. v. United States, 254 U.S. 141, 41 S.Ct. 55, 65 L.Ed. 188; Arnson v. Murphy, 115 U.S. 579, 6 S.Ct. 185, 29 L.Ed. 491; United States v. Chicago Golf Club (C.C.A.) 84 F.(2d) 914; Ritter v. United States (C.C. A.) 28 F.(2d) 265; United States v. Jefferson Electric Co., supra; Continental Mills v. United States (Ct.Cl.) 17 F.Supp. 138.

■ What is claimed and vigorously insisted on is (1) that, independent of statutory consent, plaintiffs, before the act in question was passed, acquired a vested right against the collector to hold him to account in a refund action of the kind they had instituted, and that Congress could not take this action away without providing for their use some substantial equivalent of it, and (2) that the right and remedy the act gave was not only not an equivalent of the right taken away, but in effect a complete denial of it.

Appellee as vigorously espouses the negative of both propositions. He insists that the action appellants have brought is not a nonstatutory action against him; indeed, is not truly an action against him at all. It is a kind of John Doe action, allowed in part by statutory implication, in part by statutory direction, which, by an amiable fiction to take the place of formal consent, though in name against the collector, is in substance and effect as to the amount sued for in it, against the United States. Being but a form of action for determining its obligation to refund, to which the United States has consented, it, like any other authorized form of action evidencing consent of the United States to be sued, may at any time be taken away by statute. Appellee takes vigorous issue, too, with appellants' position that the provisions for refund the act makes are intended to keep the promise to the ear in the reading of them, only to break it to the hope in their working out; that they are intended, in short, to

hold out specious, delusive, and illusory promises by a tender of administrative machinery, which is so constructed, so geared, and so operated as certainly to enmesh and destroy every claim run through it.

The burden of appellants' complaints against the act and its operation, as it seeks to condition refunds upon proof of its actual burdensomeness to claimants, is that, throwing an impossible burden on them, it requires the impossible in proof. They insist that as applied to the business they are in, and the commodities they have handled, to require claimants to establish that they, and they alone, have finally borne the burden of the exactions, is to require the proof of a negative which absolutely cannot be proven, is to in effect fix such conditions upon the refund that its denial is necessarily predetermined.

As to the taxes in question, they have pleaded and they vigorously affirm in their argument that it is not possible to determine whether the taxes were or were not passed on to others; that is, collected in the sales prices. If included at all, they were, they say, so buried in the price along with other invisible and indivisible elements of cost that it is impossible to disentangle them and to precisely say where their burden fell. This must not be the case, they say, when refund is denied on the ground that the claimant should not have back moneys which he paid into the Treasury not as exactions from himself, but as collections from others. They point, too, to the provisions in the act as to presumptions and as to procedure, and they say, these are but devices to make more certain the impossibility of proof, and thus to insure, what they declare the purpose of the act to be, that refunds will not be permitted but prevented.

Appellee denies this. He insists that, though the task is difficult, it is not impossible; though the obstacles in the way of the refund are great, they are not insuperable. He urges at last that they are no more or more onerous than considerations of natural justice and equity require of one who, having conducted its business under a plan and scheme, the purpose and effect of which is to raise the level of farm prices and therefore necessarily of prices all along the line, and having in effect, like others in the business were, been constituted a potential tax gatherer and collector through higher prices, to pass the taxes on to, to collect them from, and to pay them for, others into the Treasury, attempts to recover back for itself the sums it paid in.

He insists that the least that should be required of it is to show that, though it was expected of it and others similarly situated that they would pass these taxes on to the general public, and though this was the common and general practice, it did not in fact do so, but itself sustained the burden the general public had been expected to, and generally did, bear. He argues that so clearly was it understood, indeed, intended, that in the commercial practices under the act the taxes would be distributively passed on, and so generally was this in fact done, that Congress, upon a clear legislative declaration that the passing on was well-nigh universal, might have made the presumptions more vigorous, the conditions of proof before refunds more rigorous and exacting.

Appellee invokes as completely apposite in principle and in application, and therefore controlling as authority, the refund provisions of the 1928 act, denying refunds except to those who could prove that they had not passed illegally collected taxes on, as it is approved and discussed in the Jefferson Electric Co. Case, supra. They cite also as having bearing here Richardson Lubricating Co. v. Kinney, 337 Ill. 122, 168 N.E. 886; Standard Oil Co. v. Bollinger, 337 Ill. 353, 169 N.E. 236; and the host of cases denying recovery in tax cases, where to allow it would result in unjust enrichment. Typical of these are Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421; Champ Spring Co. v. United States (C.C.A.) 47 F.(2d) 1; Rose v. McEachern (C.C.A.) 86 F.(2d) 231.

Appellants insist that the Jefferson Electric Case is not authority here, for there, they say, the refund claimant was but a tax gatherer in law and in fact, to gather sales taxes from customers, who were expected to and did pay them, and it was therefore within congressional competence to provide that, having collected the tax from another, he should not obtain a refund for himself. This, they say, is sound doctrine applying in and limited to sales tax cases. Wayne County Produce Co. v. Duffy-Mott Co., 244 N.Y. 351, 155 N.E. 669; Lash's Products Co. v. United States, 278 U.S. 175, 49 S.Ct. 100, 73 L.Ed. 251.

Interesting as these questions and discussions are, important and far-reaching as to tax refunds, as is the principle the Jefferson Electric Company Case lays down, de-

sirable as it might be to have the limits of the principle and of the conditions under which it may be applied laid down, we are persuaded that we should not enter upon either a discussion or a decision of them. For we are convinced that appellants have failed to establish their first point, to which the second, which they and appellee so fully discuss, is completely subordinate, that the suits they seek to maintain are really personal suits against the defendant, at common law, to enforce vested rights against him as an individual, and not suits against the United States, consented to by it through the fiction of a suit against the collector. We are convinced that whatever actions appellants might conceivably have brought or bring against appellee, those they have actually brought against him are not personal, common-law actions for moneys had and received, which they expect him personally to respond to, but precise, statutory actions for refunds from the Treasury in which appellee is not a real, but only a nominal or fictional, defendant. The responsibility for the judgment, if obtained, will not be appellee's. No one, least of all either of the appellants, expects the judgment if obtained to be really against and to be really satisfied by him. The appellants know that appellee cannot respond to such judgments as they seek; they do not expect him to. Because they know this, and are really looking to the Treasury, they here plead conformity to all the statutory requirements applicable generally to tax refunds. Particularly do they plead that they have filed and prosecuted claims with the Commissioner, and that the Commissioner has finally rejected them. They are looking for satisfaction to the United States. They rely for such satisfaction upon its statutes, providing that the United States shall satisfy judgments against the collector when obtained for or on account of actions done by him, pursuant to his office.

An examination of the pleadings will show beyond question that this is true. It will show that the cause of action asserted is not a common-law action, for moneys had and received, based, as such actions must be, on wrongful seizures and detentions of plaintiffs' moneys by defendant. None of the elements which enter into and condition that action are here present. If, then, the actions are to be taken as intended to be personal, common-law actions, to be responded to personally by appellee, and not as statutory ones against and to be responded to by the United States, through the collector as proxy, the petitions are completely demurrable. But they were not so intended.

In Lincoln's case no effort was made to plead any of the elements of a common-law action. It is not claimed that the defendant had money in his hands which he had gotten from plaintiff, not in pursuance of his duties, but wrongfully, and is withholding from it under circumstances which make it inequitable for him to continue to do so. It is not even pleaded that the moneys plaintiff paid him were paid under duress and protest and therefore not voluntarily. This is an essential condition to a common-law action against the collector independent of statute, for moneys had and received, Elliott v. Swartwout, 10 Pet. 137, 9 L.Ed. 373; Cary v. Curtis, 3 How. 236, 11 L.Ed. 576, and until 1924 it was to the statutory action against him, Moore Ice Cream Co. v. Rose, 289 U.S. 373, 375, 53 S.Ct. 620, 77 L.Ed. 1265; Field, The Effect of an Unconstitutional Statute, p. 251, and cases; State v. Canfield Oil Co., 34 Ohio App. 267, 171 N.E.111; People v. Ventura Refining Co., 204 Cal. 286, 268 P. 347, 283 P. 60. On the contrary, it is pleaded that the moneys were paid over to and collected by appellee in pursuance of his duty to collect them.

Anniston's case was pleaded the same way, until by its amendment, filed June 12, 1936, it alleged without pleading any facts but merely as a conclusion that nearly all of the sums it had paid were paid under duress and protest. But these allegations are not sufficient to convert the suit Anniston brought from the statutory action for refund, allowed by the Congress, to a common-law action for moneys had and received independent of statutory grant. For the case is framed as an action for refund. It is definitely pleaded that a claim for refund was made, not to the collector, but to the Commissioner. It is insisted that every step on which appellant relies in the statutory refunding process had been gone through to the point of suit. And in its brief appellant makes it more clear that the suit was in reality not against the appellee, but against the United States, by pointing to the statute, 26 U.S.C.A. § 1670 (b), authorizing the Commissioner to repay the collector the full amount of moneys recovered against him in any court for any internal revenue taxes collected by him, as well as to 28 U.S.C.A. § 842, providing that, upon the giving of a cer-

tificate of probable cause, no execution shall issue against the collector on any judgment against him for moneys he had collected, but the amount so recovered shall be paid out of the Treasury.

In view of the suits plaintiffs have actually brought, and of the state of the authorities as to such suits, the briefs are full of what seems little better than quibbling over whether their actions are common-law actions, with statutory limitations, or purely statutory ones. We think it may not be doubted that the whole current of authority is to the effect that the actions they have brought are given by statute, and may not, except in accordance with statutory consent, be maintained. Cary v. Curtis, 3 How. 236, 11 L.Ed. 576; Barney v. Watson, 92 U.S. 449, 23 L.Ed. 730; Arnson v. Murphy, 109 U.S. 238, 3 S.Ct. 184, 27 L.Ed. 920; Id., 115 U.S. 579, 580, 6 S.Ct. 185, 29 L.Ed. 491; Cheatham v. United States, 92 U.S. 85, 23 L.Ed. 561; Moore Ice Cream Co. v. Rose, 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265; Rose v. McEachern, supra.

In Schoenfeld v. Hendricks, 152 U.S. 691, 693, 14 S.Ct. 754, 755, 38 L.Ed. 601, it is said: "It was decided by this court in Arnson v. Murphy, 109 U.S. 238, 3 S.Ct. 184 [27 L.Ed. 920], that the common-law right of action against a collector to recover duties illegally collected was taken away by act of congress, and a statutory remedy given, which was exclusive."

Expressions in Smietanka v. Indiana Steel Co., 257 U.S. 1, 42 S.Ct. 1, 66 L.Ed. 99; Sage v. United States, 250 U.S. 33, 39 S.Ct. 415, 63 L.Ed. 828; Graham & Foster v. Goodcell, 282 U.S. 409, 51 S.Ct. 186, 75 L.Ed. 415; White v. Hopkins (C.C.A.) 51 F.(2d) 159; Tait v. Western Md. R. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405, relied on by appellants as declaring the law to be of a different purport, do not do so. They must be read as applied to the situations specifically dealt with under those decisions and the matters decided in them. They did not purport to deal with the question at issue here, whether the action against the collector for collections made officially would lie at common law independent of the congressional consent evidenced by statute. They may not be distorted into an overruling of the long line of cases beginning with Elliott v. Swartwout, which discuss and point the difference between a common-law action against the collector for his wrongful conduct and the statutory action allowed against him, and through him against the United States, for doing what the law commands, or appears to command, him to do. Cf. De Lima v. Bidwell, 182 U.S. 1, at page 177, 21 S.Ct. 743, 45 L.Ed. 1041.

■ It is perfectly plain that appellants have not pleaded, we think they cannot plead, a common-law, indeed without the aid of Congress any, action, against appellee. For, as shown at length in the Swartwout and Curtis Cases, appellee has done them no actionable wrong. A collector of internal revenue, obligated by statute to collect taxes and pay them daily over to the Treasury, he has done no wrong in doing so, for which an action, equitable in its nature, like that for moneys had and received, will lie against him. The statute is his master, it is likewise his protection and shield. It directs him to collect and pay over; it protects him when he does so. The law, in the absence of a statute giving one, will raise no cause of action against him in favor of those who, like appellants, knowing that moneys were being collected by him officially, paid it over to him and continued to conduct their business under the conditions and on the basis created by the imposition of the tax, without at least requiring them to show, not merely that they paid the moneys to him, but that in doing so they have suffered a real injury. In the absence of such showing, when the collector has paid the money over as the law requires, the equities are with, rather than against, him, and except by statutory consent he may not be sued. Cary v. Curtis; Schoenfeld v. Hendricks; De Lima v. Bidwell, supra; Field, Recovery of Unconstitutional Taxes, pp. 253–255.

■ But say the appellants, our right of action springs from the fact our action asserts, that the purported law under which appellee proceeded was unconstitutional. It was therefore no law, and appellee was a trespasser ab initio, without legal protection or authority. In support of their general proposition that an unconstitutional law is no law, they quote from Norton v. Shelby County, 118 U.S. 425, at page 442, 6 S.Ct. 1121, 1125, 30 L.Ed. 178: "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."

But, like every other like phrase coined arguendo in the process of decision, this phrase leaves something to be desired,

when it is lifted from its argumentative setting to be converted into a general legal canon on, indeed, into almost a part of, the Constitution itself. When it is attempted, as here, to be given such wide application as not merely to strike down an exaction so that it cannot thereafter be collected, but to support a common-law action against a collector for moneys collected and paid into the Treasury by him under color of the law, and as a part of his official duties before the law was declared unconstitutional, it is well to call attention to exactly what was decided in that case, and to the fact that there is abundant authority to the contrary of the position appellants take.

In Norton's Case the unconstitutionality went to the existence of the office itself. All that was actually decided there was "there can be no incumbent de facto of an office if there be no office to fill." United States v. Royer, 268 U.S. 394, 397, 45 S.Ct. 519, 520, 69 L.Ed. 1011. Here the collector's office is not in question. The decision in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, that the Agricultural Adjustment Act was unconstitutional, did indeed, as declared in Rickert Rice Mills v. Fontenot, 297 U.S. 110, 56 S.Ct. 374, 80 L. Ed. 513, place collectors who should thereafter attempt to collect the tax in the position of trespassers. That decision did not, nor did that in the Rickert Case, declare that, as to the collections made in the course of their official duties under that act before its unconstitutionality was declared, collectors would be liable other than as provided by statute. It may be that, if a congressional act is on its face so arbitrary and unreasonable, so beyond power, and so violative of natural rights, as that any reasonable person must know its invalidity, persons acting under it before its unconstitutionality has been declared will not be protected from a personal accounting. When, however, as in this case, the unconstitutionality of the law was far from plain, no common-law action will be raised, we think, against collectors who, before its unconstitutionality has been searched out and declared, have, by virtue of their office, collected money and paid it over. Wendt v. Berry, 154 Ky. 586, 157 S.W. 1115, 45 L.R.A.(N. S.) 1101, Ann.Cas.1915C, 493; State v. Poulin, 105 Me. 224, 74 A. 119, 24 L.R.A. (N.S.) 408, and note, 134 Am.St.Rep. 543; Lang v. Bayonne, 74 N.J.Law, 455, 68 A. 90, 15 L.R.A.(N.S.) 93, and note, 122 Am.St. Rep. 391, 12 Ann.Cas. 961; Cooley, Constitutional Limitations (8th Ed.) vol. 1, p. 382,

and note; Field, The Effect of an Unconstitutional Statute, Introduction, pp. 3 to 13, inclusive, pp. 251, 252. Cf. Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422; Rickert Rice Mills v. Fontenot, 297 U.S. 110, 56 S.Ct. 374, 80 L.Ed. 513, as to the effect upon the right to an injunction of judicially declared illegality and unconstitutionality. We think it quite plain that neither appellant showed any right to sue, and that the judgments of dismissal must be affirmed.

We think, however, the weakness of their cases as they have brought them, statutory actions for refund, goes deeper than their mere failure to state a cause of action. Statutory consent to sue the collector in a refund action having been withdrawn, the court was without jurisdiction to entertain the suits.

The judgments of dismissal are therefore affirmed, not because the pleadings were subject to demurrer, but because consent to bring a refund suit against the collector having been withdrawn, there was no jurisdiction in the court below to entertain the actions.

Affirmed.