# DAVIES v. MILLER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

No. 1279.   Argued January 14, 15, 1889.—Decided April 1, 1889.

The notice of dissatisfaction with the decision of the collector of customs
as to the rate and amount of duties on imported goods, required by the
act of June 30, 1864, c. 171, § 14 (Rev. Stat. § 2931), to be given "within
ten days after the ascertainment and liquidation of the duties by the
proper officers of the customs," may be given at any time after the entry
of the goods and the collector's original estimate of the amount of
duties, and before the final ascertainment and liquidation of the duties
as stamped upon the entry.

THE case is stated in the opinion.

*Mr. Stephen G. Clarke* for plaintiffs in error.   *Mr. Edwin
B. Smith* was with him on the brief.

*Mr. Solicitor General* for defendants in error.

MR. JUSTICE GRAY delivered the opinion of the court.

This was an action against the executors of a late collector
of the port of New York to recover back duties exacted on
goods imported by the plaintiffs in July, August and Septem-
ber, 1873.

At the trial, the plaintiffs introduced evidence tending to
show that the duties exacted and paid were excessive; that
appeals to the Secretary of the Treasury were taken and this
action brought in due time; and that the protest as to each
entry was filed after the collector's decision on the rate and
amount of duties, but before the date of the final ascertain-
ment and liquidation of the duties, as stamped upon the entry.

The court directed a verdict for the defendants, on the
ground that the protest was filed "before the liquidation of
the entry to which it referred, and not within ten days there-
after, as required by law." The plaintiffs duly excepted to

the ruling, and, after judgment for the defendants, sued out this writ of error.

The customs acts in force at the time of the importation of these goods contained the following provisions:

The collector and the naval officer are required to make and to indorse upon the importer's entry a gross estimate of the amount of the duties on the merchandise to which the entry relates, and the merchandise cannot be lawfully landed until the amount of the estimated duties has been first paid, or secured to be paid, and a permit granted. Act of March 2, 1799, c. 22, § 49, 1 Stat. 664; Rev. Stat. § 2869.

The merchandise must be appraised, or bonds given by the importer in double its estimated value, before it is delivered from the custody of the officers of the customs. If the collector deems any appraisement too low, he may order a new appraisement, and may cause the duties to be charged accordingly. If the importer is dissatisfied with the appraisement, the collector must order another appraisement by two appraisers of a specified class, and, if they disagree, decide between them, and the appraisement thus determined shall be final and duties levied accordingly. Acts of May 28, 1830, c. 147, §§ 2, 4, 4 Stat. 409, 410; August 30, 1842, c. 270, § 17, 5 Stat. 564; March 3, 1851, c. 38, § 3, 9 Stat. 630; Rev. Stat. §§ 2899, 2929, 2930.

On the entry of any merchandise, the decision of the collector of customs at the port of importation and entry, as to the rate and amount of duties to be paid on such merchandise, shall be final and conclusive against all persons interested therein, unless the owner, importer, agent or consignee of the merchandise "shall, within ten days after the ascertainment and liquidation of the duties by the proper officers of the customs, as well in cases of merchandise entered in bond as for consumption, give notice in writing to the collector on each entry, if dissatisfied with his decision, setting forth therein distinctly and specifically the grounds of his objection thereto, and shall, within thirty days after the date of such ascertainment and liquidation, appeal therefrom to the Secretary of the Treasury." Act of June 30, 1864, c. 171, § 14, 13 Stat. 214; Rev. Stat. § 2931.

The question is whether the period allowed for filing the protest or notice of dissatisfaction with the decision made by the collector at the time of the entry upon the rate and amount of duties extends from the time of that decision, or only from the date of the final ascertainment and liquidation of the duties as stamped upon the entry, until ten days after that date; or, in other words, whether this period, which is admitted to expire ten days after the ascertainment and liquidation of the duties as so stamped, begins at the date of the stamp, or at the earlier date of the collector's original decision upon the estimated rate and amount of duties.

The determination of this question will be aided by a brief consideration of the history of the law before the passage of the act of 1864.

Under the earlier acts of Congress, which contained no provision on this subject, an importer who had paid unauthorized duties, under protest, and in order to obtain possession of his goods, might recover them back from the collector in an action of assumpsit for money had and received. *Elliott* v. *Swartwout*, 10 Pet. 137.

The act of March 3, 1839, c. 82, § 2, requiring the collector to pay the money into the Treasury, notwithstanding the protest of the importer, and giving the importer a right of appeal to the Secretary of the Treasury, was held by this court, at January term, 1845, to take away the importer's right to bring an action of assumpsit. 5 Stat. 348; *Cary* v. *Curtis*, 3 How. 236.

Then came the act of February 26, 1845, c. 22, providing that nothing in the act of 1839 should have that effect; " nor shall any action be maintained against any collector, to recover the amount of duties so paid under protest, unless the said protest was made in writing, and signed by the claimant, at or before the payment of said duties, setting forth distinctly and specifically the grounds of objection to the payment thereof." 5 Stat. 727.

Under that act, Chief Justice Taney, sitting in the Circuit Court, held that a protest might be made prospectively, so as to cover subsequent similar importations, because, said the

Chief Justice, " The protest is legally made when the duties are finally determined, and the amount assessed by the collector; and a protest before or at that time is sufficient notice, as it warns the collector, before he renders his account to the Treasury Department, that he will be held personally responsible if the portion disputed is not legally due; and that the claimant means to assert his rights in a court of justice." *Brune* v. *Marriott*, Taney, 132, 144. And his decision was affirmed by the judgment of this court. *Marriott* v. *Brune*, 9 How. 619.

That judgment, though criticised in *Warren* v. *Peaslee*, 2 Curtis, 231, was generally regarded and acted on as laying down a general rule establishing the validity of prospective protests. *Steegman* v. *Maxwell*, 3 Blatchford, 365; *Hutton* v. *Schell*, 6 Blatchford, 48, 55, and *Fowler* v. *Redfield*, there cited; *Wetter* v. *Schell*, 11 Blatchford, 193, 196, and *Chouteau* v. *Redfield*, there cited.

None of these cases were brought up to this court; and in some of them the rule was applied under the act of March 3, 1857, c. 98, § 5, which provided that, on the entry of any merchandise, the decision of the collector of customs at the port of importation, as to its liability to duty or exemption therefrom, should be final and conclusive against the owner, importer, consignee or agent of such merchandise, unless he should, " within ten days after such entry, give notice to the collector in writing of his dissatisfaction with such decision, setting forth therein distinctly and specifically his grounds of objection thereto," and should, " within thirty days after the date of such decision, appeal therefrom to the Secretary of the Treasury." 11 Stat. 195.

The phrase " within ten days after such entry " was thus treated as fixing a *terminus ad quem* and not a *terminus a quo*, or, in other words, as limiting the time after which a protest should not be made, but permitting it to be made as early as it could have been made under the previous law.

The act of 1857 applied only to cases where the question was whether the goods imported were or were not subject to duty at all, and left the case of goods admitted to be dutiable,

the rate and amount of duties being alone in question, to be governed by the act of 1845, requiring the protest to be filed at or before the time of paying the duties. *Barney* v. *Watson*, 92 U. S. 449.

We are then brought to the act of 1864, which, as already stated, provides that, on the entry of any merchandise, the decision of the collector as to the rate and amount of duties shall be final and conclusive, unless the importer shall, "within ten days after the ascertainment and liquidation of the duties by the proper officers of the customs, give notice in writing to the collector on each entry, if dissatisfied with his decision."

This act requires the notice of dissatisfaction with the collector's decision to be filed "within ten days after the ascertainment and liquidation of the duties," (instead of within ten days after the entry of the goods, as in the act of 1857,) evidently for the reason stated by Mr. Justice Bradley, in *Barney* v. *Watson*, above cited: "In most cases the amount, and in many cases the rate, could not be ascertained until after examination and appraisement; and hence a limitation to ten days from the time of entry would often, perhaps generally, deprive the party of any remedy at all." 92 U. S. 453.

The act of 1864, by requiring the notice of dissatisfaction to be given on each entry, necessarily prevents such a notice as to any goods from being given before the entry thereof, and precludes a prospective protest, covering future entries or importations. *Ullman* v. *Murphy*, 11 Blatchford, 354.

But the matter to which the notice of dissatisfaction applies is the decision of the collector on the rate and amount of the duties; the whole purpose of the notice is to give the collector opportunity to revise that decision; and that purpose is as well accomplished by giving the notice as soon as the goods have been entered and the duties estimated by the collector, as by postponing the giving of the notice until after the final ascertainment and liquidation of the duties has been made and stamped upon the entry.

The clause requiring the importer to give such notice "within ten days after the ascertainment and liquidation of the duties" must therefore, according to the fair and reasonable interpre-

tation of the words as applied to the subject matter, be held
to fix only the *terminus ad quem*, the limit beyond which the
notice shall not be given, and not to fix the final ascertainment
and liquidation of the duties as the *terminus a quo*, or the first
point of time at which the notice may be given.

In the case at bar, the result is that the notice on each entry,
having been given after the collector's decision and before the
expiration of ten days from the date of finally stamping upon
the entry the ascertainment and liquidation of the duties, was
seasonable.

This conclusion is in accordance with a judgment of Judge
Shipman in the Circuit Court for the Southern District of New
York, in October, 1878, in the case of *Keyser* v. *Arthur*, not
reported, but mentioned in a circular of the Treasury Depart-
ment of July 8, 1879, and shown by minutes produced at the
argument of the present case to have been as follows: Two
distinct entries of goods for immediate consumption were made,
the one September 15, and the other October 10, 1873, and
the duties were estimated by the collector and paid forthwith.
The notice of dissatisfaction with the collector's decision was
given as to the first entry October 1, and as to the second
entry October 24, 1873, and each entry was stamped as finally
liquidated November 6, 1873. Judge Shipman held the pro-
tests or notices of dissatisfaction with the collector's decisions
to be seasonable, saying: "When the collector had officially
and in writing upon the entry ascertained and liquidated the
duties upon the goods named in such entry at a certain rate of
duty, a protest within ten days after such ascertainment and
liquidation and an appeal within thirty days thereafter are
good and valid as to time, although subsequently to the date
of such ascertainment, liquidation, appeal and protest the col-
lector revises the amount of such liquidation and makes a final
ascertainment and liquidation at the same rate of duty. The
first ascertainment and liquidation is in fact a final one as to
rate. A protest and appeal within the statutory time after
the final liquidation are also good and valid. The uniform
practice in this port for many years, as to time of protest and
appeal, in conformity with this rule, which practice has been

sanctioned by all the officers of the government, is of much importance in the decision of this question."

Our conclusion also accords with decisions of state courts, expounding similar words in other statutes. *Young* v. *The Orpheus*, 119 Mass. 179; *Atherton* v. *Corliss*, 101 Mass. 40; *Levert* v. *Read*, 54 Alabama, 529.

Some expressions of judges of this court, not having this point before them, might seem to support the opposite conclusion, especially the language of Chief Justice Waite in *Watt* v. *United States*, 15 Blatchford, 29, decided July 1, 1878, and that of Mr. Justice Strong in *Westray* v. *United States*, 18 Wall. 322. But in *Watt's case*, the only question of time presented or considered related not to giving the collector notice of dissatisfaction with his decision, but to taking an appeal to the Secretary of the Treasury; and the adjudication of the Chief Justice that the collector's decision upon the rate and amount of duties, if not duly appealed from, was final and conclusive in a case where the duties had not been paid to obtain possession of the goods, but were sued for by the United States, was overruled, with his concurrence, in *United States* v. *Schlesinger*, 120 U. S. 109. And in *Westray's case*, the importer never gave any notice of dissatisfaction with the collector's decision, or took any appeal to the Secretary of the Treasury; and the only point adjudged was that the importer was not entitled to notice from the collector of his decision, before being bound thereby or required to give a notice of dissatisfaction or take an appeal.

It was insisted by the Solicitor General that "the views of the Department, legally expressed, so far as they appear in the record, recognize the true interpretation of the statutes to be that the protest must be filed after the final ascertainment and liquidation of the duties."

But the orders and circulars of the Treasury Department, given in evidence at the trial, either merely repeat the words of the act of 1864, without giving them any construction; or else clearly show that, from the time of the passage of that act until long after the entries now in question, the practical construction was to allow the notice of dissatisfaction to be

given at any time after the collector's decision estimating the rate and amount of duty at the time of the entry of the goods, provided it was not given after ten days from the final ascertainment and liquidation of the duties as stamped upon the entry.

The circular of the Treasury Department of September 30, 1878, and the opinion of the Attorney General to the Secretary of the Treasury of October 31, 1878, (16 Opinions of Attorneys General, 197,) requiring notices of dissatisfaction, under § 2931 of the Revised Statutes, to be filed after the final liquidation of the duties, were based on a misconception of the scope and effect of the decision in *Watt's case*, above cited. The circular of the Treasury Department of July 8, 1879, reëstablished the practice which, as therein stated, had prevailed before that decision at the port of New York "and all the other prominent ports of the United States, under which protests and appeals had been recognized, both by the customs officers and by this department, as valid if filed at any time before the expiration of the time mentioned in the section of law cited." And the old practice appears to have been since constantly recognized and acted on until 1886, when the Treasury Department again undertook to establish the opposite rule.

*Judgment reversed, and the case remanded to the Circuit Court with directions to set aside the verdict and order a new trial.*