In the Matter of FRED W. RAWE et al., Constituting the Erie County Board of Equalization, Appellants, against STATE BOARD OF EQUALIZATION AND ASSESSMENT et al., Respondents.

Third Department, December 23, 1955.

*Elmer R. Weil, County Attorney (Maurice J. Rumizen* and *Wortley B. Paul* of counsel), for appellants.

*Jacob K. Javits, Attorney-General (Milton Alpert, James O. Moore, Jr.,* and *Edward J. Grogan, Jr.,* of counsel), for State Board of Equalization and Assessment, respondent.

*William B. Lawless, Jr., Corporation Counsel (Abraham I. Okun of counsel)*, for Steven Pankow, as Mayor of the City of Buffalo, respondent.

*O. Clyde Joslin* for Henry J. De Witt, Jr., as Supervisor of the Town of Tonawanda, respondent.

ZELLER, J. This is a proceeding under article 78 of the Civil Practice Act by the Erie County Board of Equalization to obtain an order (1) prohibiting the State Board of Equalization and Assessment from reviewing the equalization rates established for Erie County for use during 1955, and (2) prohibiting Steven Pankow, as Mayor of the City of Buffalo, and Henry J. DeWitt, Jr., as supervisor of the Town of Tonawanda, from continuing to seek a review of the rates. Special Term dismissed the petition.

Prior to 1915 equalization rates were fixed by county boards of supervisors (Tax Law, § 50), commissioners of equalization appointed by boards of supervisors (Tax Law, § 51) and boards functioning under special acts of the Legislature (L. 1897, ch. 202, as amd., applicable to Oneida Co.; L. 1902, ch. 57, applicable to Columbia Co.; L. 1904, ch. 152, applicable to Greene Co., repealed by L. 1918, ch. 71). Equalization rates fixed by county boards of supervisors were subject to appeal to the State Tax Commission under the forerunner of present section 175 of the Tax Law but under that section appeals could only be brought by a supervisor of a town, with the consent of a majority of the town board, or by a supervisor representing wholly or in part a city or ward. (L. 1896, ch. 908, § 174.)

By chapter 317 of the Laws of 1915 new section 176-a was added to the Tax Law. Prior to its amendment in 1955 (L. 1955, ch. 778, § 2) it read, in part, as follows: " The tax commission shall have power on complaint to review the equalization fixed by the board of supervisors of any county or other lawfully constituted authority. Such complaint shall be brought by filing the complaint in the office of the tax commission within ten days after the delivery of the tax-roll to the collector." The Legislature thus authorized the Tax Commission " on complaint " to review the equalization rates fixed by the board of supervisors of any county or other lawfully constituted authority. Thus, the supervisory power of the State Tax Commission was made available to a much larger class of applicants. No longer was its power of review limited to appeals brought by supervisors, nor were there any restrictions as to persons who could seek a review by the State Tax Commission. The statute simply said

" on complaint " a review could be had. Obviously, the complaint would need to be made by a person actually affected by or concerned with the rates, but he need no longer be an official specifically designated as eligible by the Legislature. Hence, it seems clear that under section 176-a any aggrieved taxpayer or the chief executive officer of any tax district affected by equalization rates was entitled to a review of rates by the State Tax Commission.

In 1919, the Erie County Board of Equalization was created by chapter 304 of the Laws of 1919. Its sole duty is to establish proper equalization rates for the various tax districts of the County of Erie. Section 6 of that special act, in part, provides: " The mayor of a city in behalf of said city, any supervisor in behalf of their city or town which he wholly or in part represents may appeal to the tax commission from any act or decision of said commission in the equalization of assessments and the correction of assessment rolls. If such appeal is brought in behalf of the town, the majority of the town board of such town; in behalf of the city, the majority of the aldermen or councilmen or board of estimate of said city, shall first consent to the bringing of such appeal."

On or about October 29, 1954, the Erie County Board of Equalization reported its rates to the Board of Supervisors, as it is required to do. On November 26, 1954, the Mayor of the City of Buffalo and the supervisor of the Town of Tonawanda, being dissatisfied with the rates, filed complaints with the State Board of Equalization and Assessment, pursuant to section 176-a of the Tax Law, claiming that the equalization rates were unjust and inequitable and requesting that they be annulled and new rates be fixed by the State Board of Equalization and Assessment. Neither the Mayor nor supervisor obtained the consent of any other public official to the filing of the complaints. (It should be noted that the jurisdiction of the State Tax Commission concerning equalization rates has been temporarily transferred to the State Board of Equalization and Assessment. L. 1949, ch. 346; L. 1952, ch. 293; L. 1954, ch. 150.)

Petitioners argue that a review pursuant to section 176-a of the Tax Law is not available to the Mayor and supervisor and that the appeal provision contained in the special act creating the Erie County Board of Equalization is the only method available. Further, it is urged that section 176-a is applicable only to those counties which have no special statute regulating the procedure and that section 6 of the 1919 special act was intended to restrict Erie County to the appeal prescribed therein.

No good reason exists why a county, where a board of equalization has been created by a special act, should have its rates subject to revision only by an appeal remedy whereas counties which rates are fixed by a board of supervisors have available to them the appeal method pursuant to section 175 of the Tax Law and the review procedure under section 176-a of the Tax Law. By placing section 6 in the Erie County act, the Legislature did not intend to deprive Erie County of the review authorized by section 176-a of the Tax Law but to insure that both the remedy of appeal and the remedy of review were available to Erie County. Section 176-a provides for review of equalization rates fixed by boards of supervisors '' or other lawfully constituted authority.'' While section 175 provides for appeals from any act or decision of boards of supervisors in the equalization of assessments, it does not contain the phrase '' or other lawfully constituted authority.'' Had the Legislature in creating the Erie County Board of Equalization only defined its powers and prescribed its duties, doubt would have been raised whether the appeal procedure of section 175 was available in Erie County. It seems to us that section 6 of the special act was intended to make it clear that the appeal procedure is available in Erie County.

The general policy of the law is adverse to repeals by implication and courts are required to reconcile acts if by any reasonable construction that can be accomplished. (*Cimo* v. *State of New York,* 306 N. Y. 143; *Naramore* v. *State of New York,* 285 N. Y. 80; *Peterson* v. *Martino,* 210 N. Y. 412; *Davis* v. *Supreme Lodge, Knights of Honor,* 165 N. Y. 159.) To hold that section 176-a does not apply because of the existence of section 6 would, in effect, result in a repeal by implication, insofar as Erie County is concerned. Had the Legislature intended to effect such repeal, it would have expressly so stated. It is our opinion that it intended to have both provisions of law apply to rates of equalization fixed by the Erie County Board of Equalization.

Petitioners further argue that the Mayor and supervisor failed to comply with the provisions of section 176-a of the Tax Law regulating the time for filing complaints. It provided that a review shall be sought '' by filing the complaint in the office of the tax commission within ten days after the delivery of the tax-roll to the collector.'' Here, the tax rolls were delivered shortly after January 1, 1955, but the complaints were filed on November 26, 1954. Section 4 of the special act provides that on or before the first day of November in each year the Erie

County Board of Equalization shall file with the Clerk of the Board of Supervisors its report of equalized valuations and " the same shall be binding and conclusive on such board of supervisors as an equalization of the assessment of real estate for such year." The Erie County Board of Equalization filed its report with the Clerk of the Board of Supervisors on October 29, 1954. On November 23, 1954, the board duly adopted its budget for the fiscal year commencing January 1, 1955, and duly levied the taxes required to meet such budget based upon the equalized valuations and rates determined and reported by the Board of Equalization. Therefore, when the complaints were filed all necessary official action had been taken in relation to the equalization rates. The lapse of time between the levy and the delivery of the tax rolls was consumed in the clerical preparation of the tax rolls.

As a practical matter, so long as it was filed not later than ten days after the delivery of the tax rolls, it is unimportant whether the complaint was filed after the levy in November or after the delivery of the tax rolls in January. Certainly, timely notice was given. The phrase " within ten days " merely fixes a time limitation beyond which a complaint may not be filed. (*Davies* v. *Miller,* 130 U. S. 284, 289.)

Petitioners also argue that the 1949 amendment to section 10 of article VIII of the State Constitution required the Legislature to " prescribe the manner by which " the State Board of Equalization and Assessment shall determine rates of equalization, that it has neglected to do so and that, therefore, the rates which the State Board might establish upon a review proceeding, pursuant to section 176-a of the Tax Law, would be unconstitutional. The constitutional provision to which petitioners refer is entitled *" Limitations on amount to be raised by real estate taxes for local purposes; exceptions."* The section provides that the amount to be raised by tax on real estate by any county, city, village or school district in any fiscal year shall not exceed certain percentages of the average full valuation of taxable real estate, less the amount to be raised for payment of certain evidences of indebtedness. The section then provides: " The average full valuation of taxable real estate of such county, city, village or school district shall be determined by taking the assessed valuations of taxable real estate on the last completed assessment rolls and the four preceding rolls of such county, city, village or school district, and applying thereto the ratio which such assessed valuation on each of such rolls bears

to the full valuation, as determined by the state tax commission or by such other state officer or agency as the legislature shall by law direct. The legislature shall prescribe the manner by which such ratio shall be determined by the state tax commission or by such other state officer or agency.'' It is apparent that the constitutional provision applies to the fixation of equalization rates for the purpose of determining average full valuation for the operations of constitutional tax limitations. The equalization rates so fixed are '' State equalization rates.'' The parties to this proceeding are concerned not with those but with '' county equalization rates '' which are used to spread county real estate taxes among the various tax districts within the county of Erie. In our opinion, the constitutional provision has no applicability to the instant case.

The order should be affirmed, without costs.

FOSTER, P. J., BERGAN, COON and HALPERN, JJ., concur.

Order affirmed, without costs.

Application for stay heretofore made denied.