ANDERSON, Circuit Judge,
dissenting:
In my view, dissents should be sparing. We should strive for open-minded unanimity. In this case, try though I have, it is not possible to make that decision. Respectfully, my disagreement seems to demand a dissent from the majority opinion.
The Bankruptcy Appellate Panel was eminently correct when it observed that the language of section 365(d)(4) “is precise and leaves no room for arguing that an extension may be granted or confirmed after the 60 days has elapsed.” In re Southwest Aircraft Services, Inc., 66 B.R. 121, 123 (Bankr. 9th Cir.1986).
The majority attempts to find a “possible” ambiguity in order to allow more freedom and flexibility. That ambiguity simply does not exist. The majority ignores the plain meaning and the structure of the pertinent portions of section 365(d)(4). Webster’s Third International Dictionary, Unabridged, 1978, defines “within” in several different ways: “on the inside or the inner side,” “internally,” “inside the bounds of a place or region,” and “used as a function word to indicate enclosure or containment.” In any definition of the word, in any application, there is not the slightest hint that something within the parameters of containment can also, at the same time, be “without.” [1]
The majority complains that 60 days is a short period of time to act and uses that as a reason for creating an exception or extension that clearly was not contemplated by Congress. The assertion is also made that a plain reading renders the section harsh and inequitable.[2]
*855 Sixty days is really not that short. It is six times longer than that fixed to take a criminal appeal. It is twice as long as that fixed for taking a civil appeal. It is one-sixth of a year. Significant and important decisions are often made in those time frames. It may be safely assumed that debtors, their lawyers and accountants are familiar with this time frame and have (or should have) already assessed the pros and cons of accepting or rejecting a nonresidential lease prior to filing a bankruptcy petition so that they may act or advise the trustee.
In my experience, judges at all levels are quick to respond to urgent and emergency situations. An ex parte emergency motion for extension of time is clearly an option open to the debtor or the trustee in this situation. It simply was not done.
While the majority does mention and pay some lip service to the legislative history concerning the problems Congress was addressing, it fails to acknowledge that Congress, as it has the undoubted power to do, was attempting to correct a “harsh” and “inequitable” situation that was perceived as chaotic for lessors of nonresidential properties. The plain and intended meaning of section 365(d)(4) is also supported by this same legislative history. As pointed out by the bankruptcy judge in In re Bernard, 69 B.R. 13, 14 (Bankr.Ha.1986):
The legislative history of § 365(d)(4) shows that it was the result of heavy lobbying by the [sic] lessors. Previous to the enactment of the 1984 statute, the lessors were often frustrated by the long delay in regaining possession of their property from the debtors-lessees. As a result, many leased premises were oftentimes left vacant while the debtors-lessees delayed in determining whether to assume or reject a lease.
The purpose of the section was clearly intended to provide protection to lessors by requiring the trustee or debtor in possession to make prompt decisions (if not already made) to either assume, reject, or to file to extend the period in which the debt- or or trustee must do one or the other. The majority decision is unsupported and unsupportable. “The Court would truly be gazing with a jaundiced eye were it to perceive some ambiguity within § 365(d)(4).” In re Coastal Industries, Inc., 58 B.R. 48, 50 (Bankr.D.N.J.1986).
It may be trite, but underlying most trite expressions there is a vast well of human experience. Harshness or inequity is all too often in the mind and eye of the beholder. Or, as my livestockman grandfather used to say, “It just depends on whose ox is being gored!”
This statute clearly and positively demands a fixing of additional time within the sixty-day time frame, and that requirement was not satisfied.
The majority opinion relies on a line of cases interpreting former Rule 35, Fed.R. Crim.P. Whatever else may be said for that line of authority as support for the majority conclusion, it should be noted that Congress corrected the problem. That is the avenue of relief to be pursued in this case. Additionally, it is significant to point out that former Rule 35 contained no provision for an extension of time. Section 365(d)(4) does have that safety valve. Research fails to disclose any cases upsetting similar deadline setting rules. This leads me to believe that such judicial determinations are the exception rather than the rule justifying the assertion of a power to do so. As was stated by the Supreme Court in Crooks v. Harrelson, 282 U.S. 55, 60, 51 S.Ct. 49, 75 L.Ed. 156 (1930):
Courts have sometimes exercised a high degree of ingenuity in the effort to find justification for wrenching from the words of a statute a meaning which literally they did not bear in order to escape consequences thought to be absurd or to entail great hardship. But an application of the principle so nearly approaches the boundary between the exercise of the judicial power and that of the legislative power as to call rather for great caution and circumspection in order to avoid usurpation of the latter, [cite omitted]. It is not enough merely that hard and *856 objectionable or absurd consequences, which probably were not within the contemplation of the framers, are produced by an act of legislation. Laws enacted with good intention, when put to the test, frequently, and to the surprise of the law maker himself, turn out to be mischievous, absurd or otherwise objectionable. But in such case the remedy lies with the law making authority, and not with the courts.
The reasons were sufficient to persuade Congress to act. We do not sit to second-guess the wisdom of their choices and “the course Congress has set.” Heckler v. Turner, 470 U.S. 184, 212, 105 S.Ct. 1138, 1153, 84 L.Ed.2d 138 (1985).
We should affirm the Bankruptcy Appellate Panel. In my view, the majority opinion leads to unprincipled decision making.

. There are numerous cases in state and federal courts dealing with the use of the word "within" in a variety of statutory situations. Most, if not all, hold that the word "within” connotes the limit beyond which action may not be taken. See, e.g., Davies v. Miller, 130 U.S. 284, 288-89, 9 S.Ct. 560, 561-62, 32 L.Ed. 932 (1889); In re Keller, 120 F.Supp. 274, 275 (N.D.Cal.1954); Chatlos v. Overstreet, 124 So.2d 1, 3 (Fla.1960); Jensen v. Nelson, 236 Iowa 569, 19 N.W.2d 596, 598 (1945); In re Kruse's Estate, 170 Kan. 429, 226 P.2d 835, 839 (1951).

. I see no need to address all of the assertions of the majority opinion. Most speak against them *855 selves. They are couched in speculation and are without logical or authoritative support.