**In the Matter of Jerrie S. COLISH, Debtor.**

**Jerrie S. Colish, Plaintiff,**

v.

**United States of America, Department of the Treasury, Internal Revenue Service, Defendants.**

**Bankruptcy No. 197–14664–575.
Adversary No. 197–1399–575.**

United States Bankruptcy Court, E.D. New York.

Sept. 30, 1999.

Fischoff & Associates, Garden City, New York, by Gary Fischoff, for plaintiff.

U.S. Department of Justice, Washington, D.C., by Bartholomew Cirenza, for defendants.

## OPINION ON CROSS–MOTIONS FOR PARTIAL SUMMARY JUDGMENT

LAURA TAYLOR SWAIN, Bankruptcy Judge.

Before the Court are the cross-motions of defendants United States of America, Internal Revenue Service and Department of Treasury (collectively, the "Government") and plaintiff Jerrie S. Colish ("Debtor") for partial summary judgment in this adversary proceeding. The issue

presented in these motions is whether Debtor's federal income tax liabilities for the years 1991, 1992 and 1993 are nondischargeable under 11 U.S.C. § 523(a)(1)(A). The following opinion concerns the applicability of section 523(a)(1)(A) and does not dispose of any other issues raised in this adversary proceeding concerning the dischargeability of Debtor's federal income tax liabilities. Section 523(a)(1)(A) provides, in pertinent part, that income taxes assessed within 240 days of the filing of a bankruptcy petition, plus any time during which the 240 day time period is tolled by a pending offer in compromise, plus 30 days, are nondischargeable. In deciding whether Debtor's liabilities for tax years 1991, 1992 and 1993 and dischargeable, the Court must determine, first, whether Debtor's offer in compromise was made within the relevant statutory time period and, then, whether more than 240 days, plus the time an offer in compromise was pending, plus 30 days, had elapsed for each tax year at issue by the time Debtor filed his petition.

The Court has jurisdiction of this core proceeding under 28 U.S.C. §§ 1334(b) and 157(b)(2)(A), (I), and (O), and the Order of Reference, dated August 28, 1986, of the United States District Court for the Eastern District of New York.

1. As explained more fully below, the parties disagree as to the significance of Debtor's June 10, 1992 amendment to his offer in compromise concerning tax year 1991 and whether the Government should be deemed to have rejected Debtor's offer in compromise for tax year 1993 one year after Debtor submitted his offer in compromise. Although the parties included these contentions in their respective Local Rule 7056–1 statements, the Court views these matters as fundamentally legal issues. Therefore, the dispute over these issues is appropriately resolved on summary judgment.

2. Treasury Regulation § 301.7122–1T(c) requires that offers in compromise be submitted on a form approved by the IRS. 26 C.F.R. § 301.7122–1T(c); see also In re Genung, 220 B.R. 505, 507 (Bankr.N.D.N.Y.1998). Debtor's first offer in compromise was submitted on April 27, 1992 and was acknowledged by

## BACKGROUND

As required by E.D.N.Y. L.B.R. 7056–1, the Government filed and served a statement of material facts in support of its motion. Debtor filed and served a statement of material facts in support of its cross-motion. The parties have not materially controverted the factual statements contained in the respective Local Rule 7056–1 statements. Accordingly, the material facts contained in those statements will be deemed admitted. See E.D.N.Y. L.B.R. 7056–1.[1] On April 29, 1997, Debtor filed a petition under Chapter 7 of the Bankruptcy Code.

### 1991 Tax Year

The Internal Revenue Service (the "IRS") assessed Debtor's 1991 taxes on May 18, 1992. Prior to the assessment, Debtor had submitted an offer in compromise for tax years 1986 through 1991 on IRS Form 656,[2] and the IRS had acknowledged the offer in writing. On June 10, 1992, Debtor submitted an amended offer in compromise for tax years 1987 through 1991 on IRS Form 656. The designation "amended" appears on the caption of this second IRS Form 656 submitted by Debtor. The IRS acknowledged Debtor's amended offer in compromise on July 14, 1992. On April 6, 1993, the IRS acknowledged a second amended offer in compro-

the IRS on April 30, 1992. The official IRS Form 656 contains a statement that the tax debtor agrees to the "waiver and suspension of any statutory periods of limitation for assessment and collection of the tax liability … while the offer is pending…. The offer shall be deemed pending from the date an authorized officer of the Internal Revenue Service accepts taxpayer-proponent's waiver of the statutory periods of limitation and shall remain pending until an authorized official of the Internal Revenue Service formally, in writing, accepts, rejects or withdraws the offer." See Government's Exh. 8. A revised Form 656 was issued in 1993 which contained substantially identical language. See Government's Exh. 13. For purposes of this opinion, the Court uses the term "acknowledge" to indicate the IRS' acceptance in writing of an offer in compromise.

mise submitted by Debtor for tax years 1987 through 1991, which added tax year 1992.

The IRS issued a letter formally rejecting Debtor's offer in compromise for tax years 1987 through 1992, as amended, on December 2, 1993. In addition, the IRS stamped each of Debtor's IRS Form 656 offers in compromise, which were acknowledged respectively on April 30, 1992, July 14, 1992 and April 6, 1993, "Rejected December 2, 1993."

Subsequently, on March 30, 1994, Debtor submitted a second offer in compromise on IRS Form 656 for tax years 1987 through 1993. The IRS acknowledged the offer on April 20, 1994. That offer was the first offer in compromise acknowledged by the IRS after assessment of Debtor's 1991 tax liabilities. Approximately seven hundred (700) days elapsed between the IRS's tax assessment of Debtor's 1991 tax liabilities and the April 20, 1994 acknowledgment of Debtor's offer in compromise.

*1992 Tax Year*

The IRS assessed Debtor's liabilities for tax year 1992 on May 10, 1993. Debtor's first offer in compromise for tax year 1992 made after the assessment was the one acknowledged by the IRS on April 20, 1994. Three hundred fifty-two (352) days elapsed between date of the IRS's assessment of Debtor's 1992 tax liabilities and the April 20, 1994 acknowledgment of Debtor's offer in compromise, which included compromise of Debtor's 1992 tax liabilities. The IRS formally rejected Debtor's April 20, 1994 offer on August 19, 1994.

*1993 Tax Year*

The IRS assessed Debtor's 1993 taxes on May 30, 1994. On September 9, 1994, subsequent to the IRS's assessment of Debtor's 1993 tax liabilities. Debtor submitted an offer in compromise on IRS Form 656 for the tax years 1986 through 1993. The IRS acknowledged Debtor's offer on November 17, 1994. One hundred sixty-nine (169) days elapsed between the

IRS's May 30, 1994 assessment of Debtor's 1993 taxes and its November 17, 1994 acknowledgment of Debtor's offer in compromise concerning 1993 tax liabilities.

Debtor submitted an amended offer in compromise concerning tax years 1986 through 1994 on May 10, 1995, which offer was acknowledged on May 19, 1995. By letter dated June 22, 1995, the IRS notified Debtor that the May 19, 1995 offer was rejected, but that Debtor had a right to protest the IRS's determination and request a conference. By letter dated July 18, 1995, Debtor submitted a protest and requested a conference. Subsequently, by letter dated May 14, 1997, the IRS rejected Debtor's offer to compromise liabilities for tax years 1986 through 1994.

### DISCUSSION

Summary judgment shall be granted in favor of a moving party where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7056). A court faced with a summary judgment motion does not make credibility determinations or weigh the evidence; all inferences must be construed in a light most favorable to the nonmoving party. *See Catanzaro v. Weiden,* 140 F.3d 91 (2d Cir.1998). Summary judgment is inappropriate where there is sufficient evidence in the record such that a reasonable fact finder could find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *L.B. Foster Co. v. America Piles, Inc.,* 138 F.3d 81, 87 (2d Cir.1998). Conclusory allegations, conjecture and speculation will not create a genuine issue of fact. *Kerzer v. Kingly Manufacturing,* 156 F.3d 396, 400 (2d Cir.1998). The Court may consider the whole record, not just the evidence highlighted by the parties. *Tur-*

*co v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir.1996).

For the following reasons, the Court concludes that there is no genuine issue as to any material fact, that 11 U.S.C. § 523(a)(1)(A) does not operate to bar the discharge of Debtor's liabilities for tax years 1991 and 1992 and that Debtor's liabilities for tax year 1993 are nondischargeable under 11 U.S.C. § 523(a)(1)(A).

*Discharge of Tax Liabilities*

11 U.S.C. § 523(a)(1)(A) provides that 11 U.S.C. § 727 does not discharge a debtor from a debt for a tax of the kind and for the periods specified in 11 U.S.C. § 507(a)(8), whether or not a claim for such tax was filed or allowed. Section 507(a)(8)(A) grants a priority for unsecured claims of governmental units to the extent that such claims are for a tax on or measured by income or gross receipts. Section 507(a)(8)(A)(ii) provides for a priority for such taxes

> assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition.

11 U.S.C. § 507(a)(8)(A)(ii).

■ The Government contends that the statutory time limitation set forth in section 507(a)(8)(A)(ii) is tolled by any offer in compromise, beginning on the date of the formal acknowledgment of the offer, regardless of whether the offer in compromise was interposed before or after a tax assessment in respect of the relevant year. The Court disagrees.

■ On its face, section 507(a)(8)(A)(ii) provides that the 240 day period is tolled where an offer in compromise is made *after* an assessment is pending. It is a well-settled rule of statutory construction that a court may depart from the literal meaning of a statute only where " 'the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' " *United States*

*v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citations omitted).

Although the Second Circuit has not yet spoken on the issue, the construction of the tolling provision in section 507(a)(8)(A)(ii) was squarely addressed by the United States Court of Appeals for the Sixth Circuit in *In re Aberl*, 78 F.3d 241, 244 (6th Cir.1996). In that case, the Sixth Circuit, affirming the district court and bankruptcy court's determinations, held that section 507(a)(7)(A)(ii) (now section 507(a)(8)(A)(ii)) "was unambiguous in its intent to apply only to offers in compromise submitted by debtors after the IRS's formal assessment of taxes." In so doing, the Circuit Court observed that it "is not the Court's role to address perceived inadequacies in [a statute]." *Id.* at 244 (citations omitted).

The Government cites to the legislative history underlying the enactment of section 507(a)(8)(A)(ii) in support of its position that Congress intended that the tolling provision also apply to offers in compromise made before an assessment. The portion of the legislative history of section 507 cited by the Government reads as follows:

> This rule closes a loophole under present law under which, following an assessment of tax, some taxpayers have submitted a formal offer in compromise, dragged out negotiations with the taxing authority until the tax liability would lose priority under the three-year priority period of present law, and then filed in bankruptcy before the governmental unit could take collection steps.

Senate Report No. 989, 95th Congress, 2d Session 71 (1978), U.S.Code Congressional & Administrative News 1978, p. 5857.

The Government contends that the quoted comment was for illustrative purposes only and should not be interpreted as the exclusive factual scenario to which Congress intended the tolling provision to apply. The Government, however, offers no

more than speculation and policy arguments to support this interpretation. These arguments are insufficient to overcome the plain language of the statute. Indeed, the absence of any discussion in the legislative history of tolling on account of pre-assessment offers in compromise counsels against the Government's broad interpretation of the statute.

Section 507(a)(8)(A)(ii) refers specifically to offers in compromise made *after* assessment and the cited legislative history specifically refers to offers in compromise made *following* an offer in compromise. Thus, the legislative history provides no basis for the Court to conclude that " 'the literal application of the statute will produce a result demonstrably at odds with the intentions of its drafters.' " *Ron Pair Enterprises, Inc.*, 489 U.S. at 242, 109 S.Ct. 1026.

Accordingly, the Court finds there is no basis either in the legislative history or in case law for extending the application of section 507(a)(8)(A)(ii) beyond its plain meaning. *See In re Nolan*, 205 B.R. 885, 893 (Bankr.M.D.Tenn.1997) (following *Aberl* ) (section 507(a)(8)(A)(ii) distinguishes between pre-assessment and post-assessment offers); *In re Gore*, 182 B.R. 293, 311 (Bankr.N.D.Ala.1995) (240 day period for collection of taxes following assessment is interrupted only by an offer in compromise interposed at some time during the 240 days).[3]

The Government also cites *Davies v. Miller*, 130 U.S. 284, 9 S.Ct. 560, 32 L.Ed. 932 (1889) in support of its reading of the statute. *Davies* involved construction of a statute dealing with the customs collector's ascertainment of duties payable upon entry of imported goods. Under the applicable law, customs collectors were required to make an estimate of customs duties upon the entry of imported merchandise. The statute provided, *inter alia*, that the customs collector's decision as to the amount of duties paid upon entry of imported merchandise was final unless the importer gave notice of dissatisfaction "within ten days after the ascertainment and liquidation of the duties" by the customs officer. *Davies*, 130 U.S. at 285, 9 S.Ct. 560.

At issue was whether the ten day period for giving notice began on the date of the final assessment of duties or earlier, when the customs collector made his preliminary determination of the amount of duties payable. The statute construed in *Davies* required notice of protest to be given upon each entry of goods, precluding any prospective protest concerning the imposition of customs duties. (Under prior law, courts had held that protest could be made prospectively, covering subsequent, similar importations.) *Id.*, at 286–87, 9 S.Ct. 560. The importer in *Davies* had given notice after the customs collector had rendered a preliminary decision with respect to the customs duties, but before a final decision had been issued. The Court held that the phrase "within ten days after" should be construed to fix the limit beyond which notice of dissatisfaction could not effectively be given and should not be construed to fix the first point in time at which effective notice could be given. In other words, the statute did not require that the importer wait until the duties had been finally determined in order to file notice of a protest. In so holding, the Court observed that the purpose of the notice of dissatisfaction provision in the statute was to give the customs officer an opportunity to revise a decision as to the amount of duties to be paid by the importer. Recognition of a notice given after a preliminary determi-

---

**3.** Further support for the Court's reading of the literal language as consistent with Congressional intent is found in the 1997 report of the National Bankruptcy Review Commission, which recommended that section 507(a)(8)(A)(ii) be amended to provide that offers in compromise should toll the 240 day time period whether the offer was made before or after assessment. Reprinted in *Collier on Bankruptcy*, Appendix G, Part 44 at 4.2.6 (15th Ed. Revised 1996). The Commission clearly had concluded that the current statute does not provide for tolling where the offer in compromise precedes the assessment.

nation was consistent with that purpose. Prospective protests (*i.e.*, in advance of any determination by the customs collector) would not, however, be recognized under the statute. *Davies*, at 288, 9 S.Ct. 560.

The *Davies* court's interpretation of the customs statute is consistent with the *Aberl* court's interpretation of section 507(a)(8)(A)(ii). In both instances, the relevant time period commences only after the government has taken an affirmative position with respect to the liability at issue.

*The June 10, 1992 Amendment*

■ The Government contends, in respect of Debtor's liabilities for tax year 1991, that Debtor's amended offer in compromise dated June 10, 1992 constituted a withdrawal of the offer in compromise accepted April 30, 1992 and the submission of a new offer. The Government offers no legal or factual support for this argument and it is rejected.

The Government admits in its Memorandum in Support of its Motion for Partial Summary Judgment that: "Under the express terms of the Form 656 offers are deemed pending from the date an authorized official of the IRS signs the Form 656 through the date the offer is withdrawn, accepted or rejected." Memorandum of the United States in Support of its Motion for Partial Summary Judgment, at p. 2.

The IRS Form 656 offer submitted by the Debtor on June 10, 1992 was clearly marked "amended" and the IRS later marked both it and the April 30, 1992 offer "Rejected—December 2, 1993." There is nothing in the record indicating that the IRS abandoned the procedures set forth in the IRS Form 656 during the relevant time period. Indeed, the IRS's own actions in respect of the April 30, 1992 offer indicate that it was treated as pending until the IRS formally rejected it on December 2, 1993. Accordingly, the Court finds that there is no material question of fact concerning whether Debtor's offer in compromise dated April 30, 1992 was pending until the Government rejected the offer on December 2, 1993.

*Debtor's Cross–Motion Concerning Tax Year 1993*

■ In its cross-motion for summary judgment, Debtor contends that the Government's delay in making a final determination on its November 17, 1994 offer in compromise and subsequent appeal should be deemed a constructive rejection of Debtor's offer in compromise after one year from the acknowledgment of the offer. Debtor argues that the Government should be equitably estopped from alleging the statutory time period had not run. Debtor offers no legal basis for this argument and the Court has found none. Moreover, when a private litigant asserts estoppel against the United States, the litigant must establish that the Government engaged in " 'affirmative misconduct going beyond mere negligence;' even then, 'estoppel will only apply where the [g]overnment's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability.' " *McCurty v. United States*, 30 Fed.Cl. 108, 112 (1993) (citations omitted). Debtor has made no such showing.

*Conclusions:*

Where there is no material factual dispute, judgment may be rendered as a matter of law. The Court finds the Debtor is entitled to partial summary judgment in his favor as to the applicability of the section 507(a)(8)(A)(ii) discharge exception concerning his 1991 tax liability.

Debtor's April 30, 1992 offer in compromise was acknowledged by the IRS prior to the IRS assessment of Debtor's 1991 tax liability. Therefore, that offer did not toll the 240 day time period under section 507(a)(8)(A)(ii). For the reasons set forth above, the Court finds that the subsequent amendments to the April 30, 1992 offer modified the offer, but did not constitute new offers. Therefore, the April 30, 1992 offer, which was interposed prior to any

assessment, was pending until the IRS formally rejected the offer on December 2, 1993. Debtor's April 20, 1994 offer in compromise was thus the first offer submitted after assessment of Debtor's 1991 taxes. Approximately 700 days had elapsed between the assessment and the Debtor's April 20, 1994 offer in compromise. Because more than 240 days had elapsed from the date of the IRS assessment of Debtor's 1991 taxes before Debtor made his 1994 offer, the offer in compromise was not "made within 240 days after such assessment was pending" for purposes of section 507(a)(8)(A)(ii). Therefore, the April 20, 1994 offer did not toll the statutory priority period. The 1991 tax liability is outside the statutory nondischargeability and priority provisions of sections 523(a)(1)(A) and 507(a)(8)(A)(ii).

Debtor is also entitled to partial summary judgment on the section 507(a)(8)(A)(ii) issues with respect to the 1992 tax year. The IRS assessed Debtor's 1992 tax liabilities on May 10, 1993. Debtor's first post-assessment offer in compromise dealing with the 1992 tax liabilities was accepted by the Government on April 20, 1994. 352 days had elapsed from the date of the assessment to Debtor's offer. Because more than 240 days had elapsed from the date of the IRS assessment to the acceptance of the offer, the offer in compromise was not "made within 240 days after such assessment was pending" for purposes of section 507(a)(8)(A)(ii).

The Government is entitled to judgment with respect to tax year 1993. Debtor's liability for tax year for 1993 is nondischargeable under section 507(a)(8)(A)(ii). The IRS assessed Debtor's liability for tax year 1993 on May 30, 1994 and acknowledged Debtor's offer in compromise 169 days later on November 17, 1994. This offer was not rejected until May 17, 1997, after Debtor's bankruptcy petition had been filed. For the reasons stated above, there is no basis for finding that the November 17, 1994 offer should be deemed rejected after one year or for applying the principle of collateral estoppel. Accordingly, the statutory priority period had not run and the liability is nondischargeable.

## DISPOSITION OF THE MOTIONS

The Government's motion for partial summary judgment with respect to Debtor's liabilities for tax years 1991 and 1992 is DENIED; with respect to Debtor's liabilities for tax year 1993, the Government's motion is GRANTED. Debtor's cross-motion for partial summary judgment is GRANTED with respect to debtor's liabilities for tax years 1991 and 1992 and DENIED with respect to tax year 1993.

The Government shall settle an order consistent with this opinion.